**STATE FARM FIRE & CASUALTY COMPANY as subrogee of Kelly Slabach, Plaintiff,**

v.

**ELECTROLUX HOME PRODUCTS, INC., a foreign corporation, Defendant.**

**Cause No. 3:08–CV–436.**

United States District Court, N.D. Indiana, Fort Wayne Division.

June 17, 2013.

Brad M. Gordon, Grotefeld Hoffmann Schleiter Gordon & Ochoa LLP, Chicago, IL, William J. Hoffmann PHV, Grotefeld Hoffmann Schleiter Gordon & Ochoa LLP, Geneva, IL, for Plaintiff.

Laura S. Reed, Sarah Tuohy MacGill, Riley Bennett & Egloff LLP, Indianapolis, IN, Sharon A. Luarde, Brouse McDowell, Cleveland, OH, for Defendant.

### *OPINION AND ORDER*

WILLIAM C. LEE, District Judge.

Defendant Electrolux Home Products, Inc. manufactured a clothes dryer that caught on fire causing considerable damage to the home of Kelly Slabach, subrogee in this action, and her husband. State Farm Fire & Casualty insured the Slabach's home, paid their insurance claim and then sued Electrolux to recover the amount paid on the Slabach's behalf. State Farm asserts claims of strict product liability, negligence, and breach of warranty, all of which are dependent on its theory that the design and warnings for the dryer were defective thereby creating an unreasonably dangerous product.[1]

Electrolux designated its expert Dr. Christine Wood ("Wood") to counter State Farm's allegations. State Farm then moved to preclude Wood's testimony [DE 92] under Fed.R.Evid. 702 and the court's gatekeeping function identified in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny. Subsequently, the undersigned referred the motion to Magistrate Judge Roger B. Cosbey pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and N.D.Ind. Local Rule 72–1(b), for a Report and Recommendation. [DE 117]. On November 5, 2012, the Magistrate Judge entered his Report and Recommendation ("R & R") [DE 121] recommending that State Farm's motion to exclude Wood's testimony be denied in part and granted in part. Thereafter, both Electrolux and State Farm filed their Objections to the Magistrate Judge's R &

---

1. The parties advise that this case is one of hundreds of similar lawsuits filed throughout the country involving Electrolux dryer fires.

R [DE 123, DE 124] seeking to have this Court reject certain portions the R & R and, in the case of Electrolux, consider further evidence before ruling on the objections. For the reasons set forth herein, the Court will OVERRULE Electrolux's objections to the R & R; OVERRULE State Farm's objections to the R & R; ADOPT the R & R in its entirety [DE 121]; and DENY, in part, and GRANT, in part, State Farm's Motion to Exclude the Testimony of Dr. Christine Wood. [DE 92].

## STANDARD OF REVIEW

From the outset, the parties disagree on the appropriate standard of review for this Court's review of the Magistrate Judge's R & R. State Farm cites cases which indicate that motions relating to evidentiary matters are non-dispositive and, under Fed. R.Civ.P. 72(a) and 28 U.S.C. 636(b)(1)(A) the standard of review is "clearly erroneous." *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2000 WL 420548, *2, n. 1 (S.D.N.Y. April 18, 2000) ("A decision to admit or exclude expert testimony is considered 'nondispositive' of the litigation."); *Cusumano v. Mapco Gas Products, Inc.*, 1994 WL 86653, *1 (N.D.Ill. March 10, 1994). Electrolux, however, argues that as a general rule, when objections are received to a Magistrate Judge's Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B),[2] the assigned District Judge "shall make a de novo determination of those portions of the report or specified proposed findings or recom-

mendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R.Civ.P. 72(b). Under this more stringent standard, the District Judge "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* However, the court need not conduct a hearing on the entire matter, but must give "fresh consideration to those issues to which specific objections have been made." 12 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure, § 3076.8, at p. 56 (1992 Pocket Part); *See also Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995).

In this case, while the Court agrees with State Farm that the "clearly erroneous" standard is likely the more appropriate one in light of the non-dispositive nature of the motion in limine, the Court shall conduct a *de novo* review of both the Magistrate Judge's R & R. As is evidenced by this Court's ultimate conclusion, under either standard the Magistrate Judge's R & R survives scrutiny.

## DISCUSSION

On August 16, 2006, the Slabach's dryer caught fire, causing damage to their home and personal property for which State Farm paid $234,825.21.[3] The Slabach's dryer was a gas fired dryer manufactured by Electrolux. State Farm, as indicated

---

2. The undersigned's Order referring the matter to the Magistrate Judge for an R & R (DE 117) specifically indicates that the matter is referred pursuant to 28 U.S.C. § 636(b)(1)(B), Fed.R.Civ.P. 72(b) and N.D.Ind. L.R. 72–1(b) and the Magistrate Judge's R & R recites the same provisions. Those provisions are typically reserved for referrals of dispositive motions. As a result, the referral order may have contributed to the underlying dispute as to the standard of review. However, in light

of the court's determination that it will apply the more rigorous *de novo* review, it is a non-issue in the case.

3. The Court recites the facts only to the extent necessary to rule on the objections to the Magistrate Judge's R & R. A more comprehensive recitation of the facts can be found in the Magistrate Judge's R & R, (DE 121).

above, brought this subrogation action against Electrolux alleging that the dryer was defectively and dangerously designed, manufactured, assembled, and sold and failed to have adequate warnings regarding the potential for the dryer to malfunction and ignite a fire. (Complaint, ¶ 8).

Electrolux designated Drs. Christine Wood and Duane L. Steffey[4] of Exponent, Inc., to serve as its experts and counter State Farm's theory of liability. The two Drs. co-authored a written report entitled, "Evaluation of Fire Risks Associated with Clothes Dryers: Electrolux Dryers and All Dryers."[5] In that report, the Drs. opine that: (1) "[t]he risk of dryer-involved fire reported for Electrolux clothes dryers is statistically significantly lower than the risk of fires for all models of clothes dryers from any manufacturer;" and (2) "[r]elative to the fire rates for all clothes dryers, Electrolux clothes dryers are not an unreasonably dangerous product." (Dr. Wood Report, p. 8).[6] Dr. Wood also issued a second written report, hereinafter "Dr. Wood Warnings Report," wherein she analyzes the warnings and safety information that Electrolux provided in its owner's guide, operating instructions, and product labels associated with its dryers. From her analysis, she concludes that Electrolux's warnings and safety information were reasonable and adequate in content, location, and format and thus, were not defective. (Dr. Wood Warnings Report, p. 6).

The Magistrate Judge's R & R sets forth in detail Dr. Wood's qualifications including her extensive and impressive educational background, work history, including her employment with Exponent as a Principal Scientist and Director of the Human Factors Practice,[7] and her experience in researching the impact of safety and health related information on human behavior and injury reductions. In addition, the Magistrate Judge noted that she has an extensive background in risk analysis and outlined that background in his R & R. And, while the Magistrate Judge did find Dr. Wood could "certainly have more qualifications to opine in the area of statistics," (R & R, p. 1046), he did not disqualify her on this basis since, "[t]he requirement that an expert be qualified by knowledge, skill, experience, education or training should not be viewed as being particularly rigorous." (R & R, p. 1046, citing cases). In the parties' objections, neither side argues that Dr. Wood is not qualified by knowledge, skill, experience, education, or training to render the opinions she does; rather, they take issue with whether those opinions are sufficiently reliable for a jury to hear. Given the absence of objection to her qualifications, the Court hereby ADOPTS the portions of the Magistrate Judge's R & R related to Dr. Wood's qualification and concludes that she is qualified to render her opinions in this case. See *Johnson v. Zema Sys.*

---

4. Electrolux has given notice that it does not intend to call Dr. Steffey at trial and has withdrawn him as a testifying witness. Thus, he is mentioned only with respect to the hand he had in co-authoring the written report which is the subject of the Motion in Limine filed by State Farm.

5. The co-authored report, hereinafter "Dr. Wood's Report," is attached to Exhibit C to State Farm's memorandum in support of its motion and has been fully reviewed by the undersigned.

6. The Drs. offered a third opinion which Electrolux has opted to withdraw.

7. "Human Factors is a discipline that incorporates a study of human behaviors, limitations and capabilities into the design of products, systems, and equipment." (Magistrate Judge's R & R relating to State Farm expert Ronald Parsons, DE 120, p. 12 fn. 4 quoting *Winters v. Fru–Con, Inc.*, 498 F.3d 734, 741 (7th Cir.2007)).

*Corp.*, 170 F.3d 734, 739 (7th Cir.1999). (noting that if no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error); *O'Keefe v. Gist*, 908 F.Supp.2d 946, 955 (C.D.Ill.2012) (*"De novo* review of a magistrate judge's recommendation is required only for those portions of the recommendation for which particularized objections, accompanied by legal authority and argument in support of the objections, are made." quoting *United States ex rel. McCall v. O'Grady*, 1995 WL 584333, at *1 (N.D.Ill.1995)).

Her qualifications aside, the Magistrate Judge examined in great detail whether Dr. Wood's two statistical opinions are based upon a reliable methodology. Ultimately, he concluded that her statistical opinions, that is the two opinions in the Dr. Wood Report, should be excluded as unreliable for three reasons. First, the Magistrate Judge determined that in conducting her statistical analysis, Dr. Wood used data obtained from two different sources when she could have and should have used data.from comparable sources. He noted, for instance, that Dr. Wood obtained the number of fires involving all manufacturers' dryers from the National Fire Protection Association ("NFPA"),[8] but received the number of fires involving Electrolux dryers from Electrolux itself.[9] This, he concluded, created an unreliable data set from which Dr. Wood performed her calculations and reached her conclusions. Second, the Magistrate Judge focused on the fact that Dr. Wood did not independently verify the information she received from Electrolux before she used it in her calculations, thereby further suggesting its unreliability. (R & R, pp. 1048–49). Finally,

the Magistrate Judge concluded even if the data Dr. Wood used was reliable, the opinions do not assist the trier of fact because the statistical opinions do not fit the facts of the case. In reaching this conclusion the Magistrate Judge explained that Dr. Wood's comparison is not limited to dryer fires caused by lint accumulation, which is the liability theory in this case:

> State Farm alleges that the Slabachs' Electrolux gas dryer was defectively designed and that these defects caused lint to accumulate in areas not visible to the user and subsequently ignite. Dr. Wood's report does not address this claim, 'but instead compares all Electrolux dryer (regardless of model or type) with all other dryers in the United States (again, regardless of model or type) regarding the frequency of dryer fires.'

(R & R, p. 1050 quoting *State Farm Fire & Cas. Co. v. Electrolux*, No. 2:10–CV–01147 RSM, 2012 WL 161821, at *3 (W.D.Wash. Jan. 4, 2012)).

With respect to the opinions expressed in Dr. Wood's Warnings Report, the Magistrate Judge concluded that those opinions were both reliable and admissible. In doing so, he pointed out that Dr. Wood reviewed the warnings, owner's guide, and instructions associated with the Slabachs' dryer and went on to analyze the various factors relevant to the adequacy of a warning prior to offering her opinions. Moreover, Dr. Wood, relied upon the American National Standard for Product Safety Signs and Labels and explained that the warnings met those standards. She further "noted that the safety information for the dryer utilized common formatting tech-

---

8. The NFPA derives its estimates from the National Fire Reporting System ("NFIRS").

9. Electrolux derives its estimates from the number of fires reported by consumers, retail-

ers, insurance carriers, and other sources of fire incidents "in which it is claimed that the fire involved an Electrolux clothes dryer." (R & R, p. 1048).

niques that assist the reader in processing information, such as using headings, 'signal words,' and safety alert symbols." (R & R, p. 1052 quoting the Dr. Wood Warnings Report, p. 3). Finally, the Magistrate Judge emphasized that Dr. Wood acknowledged the NFPA and the Consumer Product Safety Commission ("CPSC") have recognized the risk of lint accumulation within dryers and have made recommendations to consumers relating to lint build up and servicing of dryers. Using that knowledge, the Magistrate Judge noted that Dr. Wood's opinions address whether the warnings and safety information " 'make apparent the potential harmful consequences' of lint accumulation" (R & R, p. 1053). He further concluded that together with her conclusion that the warnings are adequate in content, location, and format, she properly opines as to "whether the warning appropriately conveys the nature of this risk to consumers so they can exercise necessary caution." (*Id.*).

Despite the detailed and thorough discussion by the Magistrate Judge, both sides have filed objections to the portions of his recommendations that hinders their cause. Electrolux challenges the Magistrate Judge's recommendation that Dr. Wood's statistical analysis be excluded as unreliable while State Farm challenges the recommendation that Dr. Wood's opinions as to the adequacy of the warnings is permissible. It is to these specific objections that the Court now turns.

With respect to Electrolux's challenges to the R & R, it asserts that the Magistrate Judge misapplied the independent verification standard; erred in finding Dr. Wood's comparative analysis unreliable because she took data from two different sources; and erred in concluding that the statistical opinions were unreliable because they did not fit the facts of the case. (Objections, p. 2). It also asserts that the Magistrate Judge impermissibly intervened in areas reserved for the jury or other fact-finder. Having reviewed these objections as well as the record before the Magistrate Judge, his R & R and the briefs of the parties, the Court concludes they are not well-taken.

Electrolux argues that the Magistrate Judge unfairly required Dr. Wood to independently verify the data she received from Electrolux noting that there is nothing "illicit" in an expert analyzing data that was prepared for litigation by an interested party. *See Southwire Company v. J.P. Morgan Chase & Co.*, 528 F.Supp.2d 908, 934 (E.D.Wis.2007). However, the Magistrate Judge did not assert that the data was skewed or improperly provided to Dr. Wood at all; what the Magistrate Judge concluded is that without Dr. Wood independently verifying the facts provided to her by Electrolux, an interested party, her analysis suffered from a reliability flaw because she had not confirmed that her analysis was comparing apples to apples rather than apples to oranges. In fact, Dr. Wood's own testimony was that she accepted the reports she received from Electrolux and did nothing additional to research the sources of the information, how the data was compiled, or verify the reliability of the data. This problem, the Court concludes, as did the Magistrate Judge, renders Dr. Wood's opinion unreliable. *See* R & R, pp. 1048–49 (citing authorities).[10]

---

**10.** Electrolux asserts that if the Court conducted an evidentiary hearing as part of its *de novo* review, it could provide evidence that the information Dr. Wood received from Electrolux is not capable of the type of independent verification the Magistrate Judge believed was necessary to validate her opinions. However, the absence of independent verification was one of three reasons provided by the Magistrate Judge in his R & R for exclud-

And, even if the Magistrate Judge erred in that determination, Dr. Wood's statistical opinions suffer from two other flaws that Electrolux seeks to have this Court overlook. First, as the Magistrate Judge pointed out, in performing her comparative analysis Dr. Wood utilized data from two entirely different sources. Dr. Wood compared the number of fires involving all manufacturers' dryers against the number of fires reported directly to Electrolux to reach her conclusion that "[t]he risk of dryer-involved fires reported for Electrolux clothes dryers is statistically significantly lower than the risk of fires for all models of clothes dryers from any manufacturer." (Dr. Wood Report, p. 8). However, the number of dryer fires involving all manufacturers' dryers came from one source, an NFPA report while the number of dryer fires involving Electrolux fires came from another. Thus, her conclusion is based on data obtained from two different batches of data.

More importantly, however, the comparative analysis is irrelevant to the facts of this case. The underlying theory is that Electrolux dryers have a design defect in that they permit lint to accumulate in areas that combust thereby creating a higher rate of fires than other dryers manufactured in the United States. Thus, the relevant inquiry is whether Electrolux dryers have a higher rate of fires caused by lint collection in high combustion areas than other manufacturers' dryers. The data analyzed by Dr. Wood is not limited to this particular design problem. She does not analyze the data provided to her to assess the reported cause of the dryer fire; rather, she examines all types of dryer fires to all types of dryer fires reported to Electrolux. Thus, her analysis is

not specific to the issue in this case. Instead, it is a general analysis of whether, on the whole, Electrolux dryers are comparatively safer than other brands. Accordingly, the Court agrees with the Magistrate Judge's R & R, that the statistical opinions offered by Dr. Wood are unreliable and must be excluded. Electrolux's objections to the R & R are therefore, OVERRULED.

This leaves State Farm's objections to the portion of the R & R that recommends denying the motion in limine with respect to Dr. Wood's warning opinions. There is little to be said about the validity of State Farm's objection. State Farm asserts that Dr. Wood's opinion is flawed because her opinion speculates that *if* the Slabach's had complied with the warnings provided, there would have been no fire and thus, no injury. (State Farm Objection, p. 2). However, this is a mischaracterization of Dr. Wood's opinions. Dr. Wood specifically indicates in her report that "the fact that some users may not follow the safety information presented within an instruction or warning does not make the information 'defective.'" (Dr. Wood Warnings Report, p. 5). Paraphrasing slightly, Dr. Wood's opinion is simply that based upon her knowledge and research, the warning information she reviewed for Electrolux dryers is adequate in factual content, location, and format to warn the users of safety risks associated with the use of the product. The Court has reviewed this report and has found no opinion by Dr. Wood that indicates had the Slabach's followed the warnings, no fire would have occurred.

That said, State Farm points to particular portions of her warning opinions such as Dr. Wood's opinion that Electrolux's 18

---

ing the opinion on reliability grounds. Thus, even if the Court entertained the evidence Electrolux believes it could supply, the Court

would still find the opinions unreliable and adopt the Magistrate Judge's R & R for the two remaining reasons set out in the R & R.

month cleaning warning (in essence, a warning that a qualified service person should inspect and clean the dryer at 18 month intervals) is adequate and claims it is speculative/inaccurate since she has no knowledge as to why the time period specified in the warning exists or as to whether the 18 month interval is frequent enough to avoid fires. But again, State Farm mischaracterizes the record. Dr. Wood is not offering an opinion as to whether qualified service personnel would have been able to clean the Slabach's dryer thereby preventing the fire that caused the injury. Rather, she is simply opining that the warning was sufficient to notify the consumer that they should call someone to clean the dryer, i.e. whether the factual content of the warning conveyed a message to the consumer.

█ More importantly, however, State Farm's issues with Dr. Wood's warnings opinions are an issue for cross-examination at trial, not a reason to exclude her warnings opinions as a whole. Indeed, "[a] *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir.2012) If, as it does in this case, the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Accordingly, the Court OVERRULES State Farm's

Objections to the Magistrate Judge's R & R.

## CONCLUSION

█ Based on the foregoing, the Court the Court will OVERRULE Electrolux's objections to the R & R [DE 123]; OVERRULE State Farm's objections to the R & R [DE 124]; ADOPT the R & R in its entirety [DE 121][11]; and DENY, in part, and GRANT, in part, State Farm's Motion to Exclude the Testimony of Dr. Christine Wood. [DE 92].

## REPORT AND RECOMMENDATION

ROGER B. COSBEY, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff State Farm Fire & Casualty Company insured Kelly Slabach, the subrogee in this action, and her husband. In August 2006, the Slabachs' clothes dryer, which Defendant Electrolux Home Products, Inc., manufactured, caught on fire, causing considerable property damage to their home. State Farm paid for the damage and then sued Electrolux to recover the amount paid. State Farm brings strict product liability, negligence, and breach of warranty claims against Electrolux, all of which are based on its theory that the design of and warnings associated with the Slabachs' Electrolux dryer were defective and unreasonably dangerous.

Electrolux denies these allegations and proffered Dr. Christine Wood as an expert. State Farm subsequently moved to preclude Dr. Wood from testifying. (Docket # 92.) On September 24, 2012, District

---

11. The court notes that in limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of trial. *See Ohler v. United States*, 529 U.S. 753, 758 fn. 3, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000). Thus, the issue of the admissibility of Dr. Wood's testimony may be revisited at trial or in a final pretrial conference if the presiding trial judge is so inclined.

Court Judge William C. Lee entered an Order pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Northern District of Indiana Local Rule 72–1(b), referring State Farm's motion to the undersigned Magistrate Judge for a Report and Recommendation. (Docket # 117.)

For the following reasons, the undersigned Magistrate Judge will recommend that Plaintiff's Motion to Exclude Dr. Christine T. Wood from Testifying at Trial (Docket # 92) be GRANTED IN PART and DENIED IN PART.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On August 16, 2006, Kelly and Rodney Slabach's dryer caught fire, causing damage to their home and personal property. (Pl.'s Mem. in Supp. of its Mot. to Exclude Dr. Christine T. Wood from Testifying at Trial ("Pl.'s Mem. in Supp.") 1.) State Farm insured the Slabachs and paid approximately $234,825.21 for the property damage and their additional losses. (Pl.'s Mem. in Supp. 1; Compl. ¶ 11.)

The Slabachs' dryer was a gas fired dryer manufactured by Electrolux. (Pl.'s Mem. in Supp. 1.) As such, State Farm subsequently brought a subrogation action against Electrolux, alleging that the Slabachs' dryer was defectively and dangerously designed, manufactured, assembled, and sold and failed to have adequate warnings regarding the potential for the dryer to malfunction and ignite a fire. (See Compl. ¶ 8.)

To counter State Farm's claims, Electrolux retained Drs. Christine T. Wood and Duane L. Steffey of Exponent, Inc., to serve as its experts. (Pl.'s Mem. in Supp. 4–5.) Drs. Wood and Steffey co-authored a written report entitled, "Evaluation of Fire Risks Associated with Clothes Dryers: Electrolux Dryers and All Dryers." [1] (Pl.'s Mem. in Supp. 5.) In the report,[2] Drs. Wood and Steffey opine that 1) "[t]he risk of dryer-involved fire reported for Electrolux clothes dryers is statistically significantly lower than the risk of fires for all models of clothes dryers from any manufacturer"; and 2) "[r]elative to fire rates for all clothes dryers, Electrolux clothes dryers are not an unreasonably dangerous product." [3] (Dr. Wood Report 8.) Dr. Wood also issued a second written report concerning the warnings and safety information that Electrolux provided in the owner's guide, operating instructions, and product labels associated with its dryers.[4] (Pl.'s Mem. in Supp. 14.) Specifically, Dr. Wood opines that Electrolux's warnings and safety information were reasonable and adequate in content, location, and format and were not defective. (Dr. Wood Warnings Report 6.)

Dr. Wood received a Ph.D in experimental psychology and a B.A. in psychology from Stanford University. (Dr. Wood Report App. B at 18.) She works at Ex-

---

1. Electrolux has advised State Farm that it is not calling Dr. Steffey to testify at trial and has withdrawn him as a testifying witness. (Pl.'s Mem. in Supp. 5 n. 3, n. 5.)

2. Drs. Wood and Steffey's report is attached as Exhibit C to State Farm's memorandum in support of its motion and is hereinafter referred to as "Dr. Wood Report."

3. Drs. Wood and Steffey also offered a third opinion—that nearly one-third of dryer fires involve consumers failing to clean the dryer (Dr. Wood Report 8)—but Electrolux has since withdrawn this opinion (Electrolux's Resp. in Opp. to Mot. to Exclude Test. of Christine Wood Ph.D ("Def.'s Resp. in Opp.") 9.)

4. Dr. Wood's warnings report is attached as Exhibit A to Electrolux's response in opposition to State Farm's motion and is hereinafter referred to as "Dr. Wood Warnings Report."

ponent as a Principal Scientist and Director of the Human Factors Practice. (Dr. Wood Report App. B at 18.) She has spent nearly twenty years researching the impact of safety and health-related information on human behavior and injury reduction and has analyzed, evaluated, and developed safety information for many different products, including consumer products, medical devices, work place equipment, and motor vehicles. (Dr. Wood Report App. B at 18.) Much of Dr. Wood's work focuses on issues related to child safety, such as the risk of child-play lighter fires. (Dr. Wood Report App. B at 18; Dr. Wood Dep. 7.)

Dr. Wood has performed risk analysis for child-play fires as well as fires involving kitchen ranges, smoke detectors, and dishwashers. (Dr. Wood Dep. 7–8.) She is a member of the Society for Risk Analysis and has published several articles on risk analysis, including the rollover risk for pickup trucks, playground hazard risks, and the risks from the occupational use of extension ladders. (*See* Dr. Wood Report App. B at 20–23.)

Dr. Wood has also analyzed injury and illness, adverse event, and accident data from a wide range of sources and used quantitative analyses to develop and assess the effectiveness of safety information and dissemination methods. (Dr. Wood Report App. B at 18.) She has further presented quantitative analyses of accident patterns for individual products to regulatory agencies and has designed and collected data using written questionnaires, interviews, and group discussions. (Dr. Wood Report App. B at 18.) Before joining Exponent, Dr. Wood held a number of research positions. (*See* Dr. Wood Report App. B at 18.)

On March 1, 2012, State Farm moved to exclude Dr. Wood from testifying at trial, arguing that she is not qualified to render her proffered opinions that the risk of fires involving Electrolux dryers is statistically lower than risk of fires for other manufacturers' dryers and that Electrolux dryers are not unreasonably dangerous (Pl.'s Mem. in Supp. 5); that her methodology in reaching these opinions was unreliable (Pl.'s Mem. in Supp. 6–12); and that her opinions on warnings were also unreliable (Pl.'s Mem. in Supp. 14–18). Electrolux responded, countering State Farm's arguments. (Docket # 97.) In its reply (Docket # 102), State Farm also argues that Dr. Wood's statistical opinions do not fit the facts of the case. (Pl.'s Reply Mem. in Supp. of its Mot. to Exclude Dr. Christine T. Wood from Testifying at Trial ("Pl.'s Reply") 6.)

### III. APPLICABLE LAW

The admissibility of expert evidence is governed by Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny. *Winters v. Fru–Con Inc.*, 498 F.3d 734, 741 (7th Cir.2007). Rule 702 provides that following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED.R.EVID. 702.

*Daubert* requires a district court to exercise a "gatekeeping" function to ensure that expert testimony is both reli-

able and relevant pursuant to Rule 702. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Happel v. Walmart Stores, Inc.,* 602 F.3d 820, 824 (7th Cir.2010); *see generally Daubert,* 509 U.S. at 589–92, 113 S.Ct. 2786; *Naeem v. McKesson Drug Co.,* 444 F.3d 593, 607 (7th Cir.2006); *Deputy v. Lehman Bros., Inc.,* 345 F.3d 494, 505 (7th Cir.2003). This inquiry applies not only to scientific testimony, "but to all kinds of expert testimony." *United States v. Conn,* 297 F.3d 548, 555 (7th Cir.2002) (noting that Rule 702 "makes no distinction between 'scientific' knowledge and other forms of specialized knowledge" (citing *Kumho Tire,* 526 U.S. at 149, 119 S.Ct. 1167)). The fundamental purpose of the gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire,* 526 U.S. at 152, 119 S.Ct. 1167.

■ According to the Seventh Circuit Court of Appeals, to gauge reliability, "the court is to determine whether the expert is qualified in the relevant field and ... examine the methodology the expert has used in reaching his conclusions." *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir.2000). When determining whether an expert is qualified, the court should consider her "full range of practical experience as well as academic or technical training...." *Trs. of Chi. Painters & Decorators Pension v. Royal Int'l Drywall & Decorating, Inc.,* 493 F.3d 782, 788 (7th Cir.2007) (quoting *Smith,* 215 F.3d at 718). Nevertheless, "[a] court's reliability analysis does not end with its conclusion that an expert is qualified to testify about a given matter.... [T]he court's gatekeeping function [also] focuses on an examination of the expert's methodology." *Smith,* 215 F.3d at 718; *see also Winters,* 498 F.3d at 742. Accordingly, "[an] expert['s] work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.,* 217 F.3d 919, 924 (7th Cir.2000). The court's focus must be solely on the principles and methodology the expert used and not on the conclusions generated. *Winters,* 498 F.3d at 742; *see also Smith,* 215 F.3d at 718 ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact....").

■ Specifically, *Daubert* outlined the following, non-exhaustive factors to guide district courts in assessing an expert's methodology:

(1) whether the theory has been or is capable of being tested; (2) whether the theory has been subjected to peer review and publication; (3) the theory's known or potential rate of error; and (4) the theory's level of acceptance within the relevant community.

*Bielskis v. Louisville Ladder, Inc.,* 663 F.3d 887, 894 (7th Cir.2011) (quoting *Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786). At the same time, this inquiry is fact-dependent and flexible; the district court is given "wide latitude in performing its gate-keeping function and determining both how to measure the reliability of expert testimony and whether the testimony itself is reliable." *Lapsley v. Xtek, Inc.,* 689 F.3d 802, 810 (7th Cir.2012) (quoting *Bielskis,* 663 F.3d at 894).

■ But even if an expert's testimony is deemed reliable, it must be excluded if it is not relevant, which means under Rule 702 that it is not likely "to

assist the trier of fact to understand the evidence or determine a fact in issue...." *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir.1996); *see also United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir.2007). Stated another way, "the suggested ... testimony must 'fit' the issue to which the expert is testifying." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir.2002) (quoting *Porter v. Whitehall Labs. Inc.*, 9 F.3d 607, 614 (7th Cir.1993)). If the proposed expert testimony satisfies the *Daubert* threshold of both relevance and reliability, "the accuracy of the actual evidence is to be tested before the jury with the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley*, 689 F.3d at 805 (quoting *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786). "The burden of showing an expert's testimony to be relevant and reliable is with the proponent of the evidence." *Bickel v. Pfizer, Inc.*, 431 F.Supp.2d 918, 921 (N.D.Ind.2006).

Moreover, when determining whether an expert's testimony is admissible, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir.2003) (citing *Gen. Elec. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). As the Supreme Court wrote: "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.*, 522 U.S. at 146, 118 S.Ct. 512. Stated another way, an expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elec. Corp. v. WH–TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir.2005); *see also Mamah*, 332 F.3d at 478 ("The court is not obligated to admit testimony just because it is given by an expert."). Indeed, the Seventh Circuit has consistently held that "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Zenith Elec. Corp.*, 395 F.3d at 419–20 (collecting cases).

## IV. DISCUSSION[5]

State Farm challenges Dr. Wood's qualifications to render statistical opinions, the

---

5. A district court enjoys wide latitude in performing its gatekeeping function and deciding how to determine the reliability of an expert's testimony. *Bielskis*, 663 F.3d at 894; *In re Syed*, 238 B.R. 133, 142 (N.D.Ill.1999). As such, a *Daubert* hearing was not held on this motion as the record was sufficient to allow the Court to decide the *Daubert* issues without one. *Olinger v. U.S. Golf Ass'n*, 52 F.Supp.2d 947, 948 (N.D.Ind.1999); *accord Mitchell v. Iowa Interstate RR Ltd.*, No. 07–1351, 2010 WL 2179715, at *3 (C.D.Ill. May 26, 2010) (finding that a *Daubert* hearing was not required where the record was more than adequate to conduct a *Daubert* examination without a hearing); *see generally In re Syed*, 238 B.R. at 142 (stating that a court is not required to hold a full *Daubert* hearing each time a party offers expert testimony). The

parties do not indicate why such a hearing is necessary or what missing information a hearing would supply, and, according to the Seventh Circuit, this Court is not required to conduct a *Daubert* hearing. *See Target Mkt. Publ'g, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1143 n. 3 (7th Cir.1998) (finding that nothing in *Daubert* required district courts to conduct *in limine* hearings concerning every proffer of expert testimony and that a hearing was not necessary when the district court had the expert's report and all the documents upon which the report drew before it and the movant did not indicate what missing information a hearing would supply); *see also Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067–68 (7th Cir. 1998) (holding that "the district court had a sufficient basis for her decision without holding a hearing" and that "[w]e have not re-

reliability of the methodology she used in reaching her opinions on both statistics and warnings, and the relevancy of her opinions on statistics. State Farm's attack on Dr. Wood's statistical opinions ultimately have merit, warranting their exclusion. Dr. Wood's warnings opinions, however, are admissible.

### A. Dr. Wood Is Qualified to Render Her Opinions on Statistics

State Farm concedes that Dr. Wood is qualified to opine on warnings (Pl.'s Reply 1) and attacks only her qualifications to render the statistical opinions in her joint report with Dr. Steffey (Pl.'s Mem. in Supp. 5–6; Pl.'s Reply 5–6). To review, Drs. Wood and Steffey opined that the risk of dryer fires reported for Electrolux dryers is statistically significantly lower than the risk of fires for all manufacturers' dryers and that relative to fire rates for all dryers, Electrolux dryers are not unreasonably dangerous. (Dr. Wood Report 8.) State Farm argues that Dr. Wood does not have the required "knowledge, skill, experience, training or education" to render these opinions because she has little education or background in statistics, the actual design of household appliances, product defect analysis, or fire sciences. (Pl.'s Mem. in Supp. 5.)

But "[a] witness may qualify as an expert even if the opposing counsel can point to deficiencies in his or her qualifications." *Traharne v. Wayne/Scott Fetzer Co.*, 156 F.Supp.2d 697, 706 (N.D.Ill.2001). First, Dr. Wood is not offering any opinion as to whether Electrolux dryers are defective; her opinions are limited to what she concluded about the risk of fires involving Electrolux dryers and dryers in general after a statistical analysis (*see* Dr. Wood Report 2 ("Exponent was retained to perform statistical analyses of the risk of fire

involving Electrolux clothes dryers and clothes dryers in general....")). Despite her limited experience with dryers particularly, Dr. Wood has performed similar product risk analysis of fires involving kitchen ranges, smoke detectors, and dishwashers. (Dr. Wood Dep. 7–8.) She has also published a number of articles on risk analysis. (*See* Dr. Wood Report App. B at 19–21.) And, although State Farm takes issue with the fact that Dr. Wood is not a statistician (*see* Pl.'s Reply 3), as a highly educated psychologist, Dr. Wood has considerable knowledge in the area of statistics (Dr. Wood Dep. 4).

While Dr. Wood could certainly have more qualifications to opine in the area of statistics, "[t]he requirement that an expert be qualified by knowledge, skill, experience, education or training should not be viewed as being particularly rigorous." *Traharne*, 156 F.Supp.2d at 706. Indeed, "an adequately qualified witness need not specialize in the field in which the opinion is offered." *Norwest Bank, N.A. v. K–Mart Corp.*, No. 3:94–CV–78RM, 1997 WL 33479072, at *2 (N.D.Ind. Jan. 29, 1997) (citing *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 783 (3d Cir.1996)); *see also Dairyland Power Coop. v. United States*, No. 04–106 C, 2008 WL 5122339, at *10 (Fed.Cl. June 20, 2008) ("An expert need only be qualified and need not be the best and the brightest for testimony to be admissible."); MATTHEW BENDER & CO., INC., FEDERAL RULES OF EVIDENCE MANUAL § 702.02 (2012) ("[C]ourts have not required a party to show that the witness is an outstanding expert, or to show that the witness is well-known or respected in the field; these are generally questions of weight.").

Therefore, Dr. Wood's knowledge of statistics from her psychology background

quired that the *Daubert* inquiry take any specific form").

along with her experience conducting product risk analysis similar to that performed in this case qualify her, at least under these circumstances, to offer the disputed opinions on statistics. *See Smith,* 215 F.3d at 718 ("While extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." (internal quotations and citations omitted)); *see also Kumho Tire,* 526 U.S. at 156, 119 S.Ct. 1167 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); *Conn,* 297 F.3d at 556 (stating that "genuine expertise may be based on experience or training"). Ultimately, however, whether Dr. Wood is qualified to render statistical opinions is irrelevant as the methodology she used in conducting her comparative analysis is unreliable, necessitating the exclusion of these opinions.

### B. Dr. Wood's Statistical Opinions Are Based on an Unreliable Methodology

Besides attacking Dr. Wood's qualifications, State Farm also argues that Dr. Wood used an unreliable methodology in conducting her comparative analysis of the risk of fire involving Electrolux dryers and dryers in general, which then led to her conclusion that Electrolux dryers are not unreasonably dangerous. (*See* Pl.'s Mem. in Supp. 6–12.) Specifically, State Farm contends that, in conducting her statistical analysis, Dr. Wood used data that was obtained from completely different sources and is inherently and significantly different in kind and scope. (Pl.'s Mem. in Supp. 7.) While she obtained her information on the number of fires involving all manufacturers' dryers from the March 2009 National Fire Protection Association

("NFPA") report (which derives its estimates from the National Fire Reporting System ("NFIRS")), Dr. Wood derived the number of fires involving Electrolux dryers solely from Electrolux, which related the number of dryer fires reported to it. (Pl.'s Mem. in Supp. 9–10.) According to State Farm, this amounts to "comparing apples and oranges" and necessarily skews the data in favor of Electrolux. (Pl.'s Mem. in Supp. 11.) State Farm further argues that Dr. Wood's second opinion— that Electrolux dryers are not unreasonably dangerous—is a function of the same flawed statistical analysis and should also be excluded. (Pl.'s Mem. in Supp. 12.) In defense of Dr. Wood's statistical opinions, Electrolux argues that she used the best data available and that this data is typical of the data manufacturers use when performing a statistical risk analysis. (Def.'s Resp. in Opp. 6–7.)

The *Daubert* "framework for assessing expert testimony is applicable to social science experts, just as it applies to experts in the hard sciences." *Tyus v. Urban Search Mgmt.,* 102 F.3d 256, 263 (7th Cir.1996). And although "the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case," *Kumho Tire,* 526 U.S. at 141, 119 S.Ct. 1167 (citations omitted), "the methodology used by social science experts to reach their conclusions must 'adhere to the same standards of intellectual rigor that are demanded in [their] professional work' in order to be reliable," *Obrycka v. City of Chicago,* No. 07 C 2372, 2011 WL 2600554, at *8 (N.D.Ill. June 29, 2011) (quoting *Chapman,* 297 F.3d at 688).

Nonetheless, while Federal Rule of Evidence 702 is the "primary locus" of the court's gatekeeping role, *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786; *In re TMI Litig.,* 193 F.3d 613, 697 (3d Cir.1999),

*Daubert* also cautioned judges assessing expert testimony to be mindful of other applicable rules, such as Federal Rule of Evidence 703, which allows an expert to base an opinion on information that is not itself admissible so long as it is the kind of information on which other experts in the field rely, *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 801 (N.D.Ill.2005) (citing *Daubert*, 509 U.S. at 595, 113 S.Ct. 2786); *see* Fed.R.Evid. 703. At the same time, "if the data underlying the expert's opinion is 'so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded.'" *Lyman v. St. Jude Med. S. C., Inc.*, 580 F.Supp.2d 719, 726 (E.D.Wis.2008) (quoting *In re TMI Litig.*, 193 F.3d at 697).

▆▆▆▆ Furthermore, Rule 703 was "not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Loeffel Steel Prods.*, 387 F.Supp.2d at 808 (citations omitted). As such, an expert's proffered opinion that merely parrots information provided to her by a party is generally excluded. *King–Indiana Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07–cv–00341–SEB–DML, 2009 WL 3187685, at *2 (S.D.Ind. Sept. 29, 2009) (citing *Black & Decker v. Bosch Tools*, No. 04 C 7955, 2006 WL 5156873, at *1 (N.D.Ill. Sept. 8, 2006)). Moreover, "when an expert relies upon information given to him by a party or counsel, [she] must independently verify that information before utilizing it in [her] calculations." *Id.* (citation omitted); *see Lyman*, 580 F.Supp.2d at 726 (excluding expert testimony where expert failed to verify the reliability of data given to him by counsel).

▆▆▆▆ Although "[t]here is a fine line between a court finding that proffered expert testimony is 'unpersuasive' (and capable of being submitted to a jury) and when a court concludes that evidence is wholly 'unreliable' (and properly excludable under *Daubert*)," *Fail–Safe, L.L.C. v. A.O. Smith Corp.*, 744 F.Supp.2d 870, 887 (E.D.Wis.2010), here, Dr. Wood's testimony on statistics falls on the side of being unreliable rather than merely unpersuasive. In her report, Dr. Wood compared the risk in the United States of dryer fires *reported* to Electrolux for its dryers to the risk posed by all models of dryers from all manufacturers. (Dr. Wood Report 4.) She determined the "adverse event" risk ratio by dividing the number of adverse events (dryer fires) by the amount of exposure (the number of dryers in use). (Dr. Wood Report 4–5; Dr. Wood Dep. 11–12.) Dr. Wood indicated that she determined the number of fires involving dryers from all manufacturers and the number involving only Electrolux dryers from two different sources. (*See* Dr. Wood Report 4.) Data on fires nationwide involving dryers from all manufacturers was obtained from a NFPA report and was derived from the NFIRS's data, which consists of reports by firefighters from a sample of fire departments across the country. (Dr. Wood Report 4; *see* Dr. Wood Dep. 13–14.)

On the other hand, data regarding the fires involving Electrolux dryers was obtained from Electrolux itself, which compiled reports from consumers, retailers, insurance carriers, and other sources of fire incidents "in which it is claimed that the fire involved an Electrolux clothes dryer." (Dr. Wood Report 4.) Dr. Wood testified that she accepted those numbers as the number of adverse events for Electrolux dryers. (Dr. Wood Dep. 15–16.) Besides the multi-page document that Dr. Wood received from Electrolux providing these numbers, Dr. Wood did not review

or rely on any other documents in determining the number of adverse events for Electrolux dryers or do anything further to examine the nature of the sources who reported these fire incidents to Electrolux. (Dr. Wood Dep. 15–17.)

██ But "[w]hen an expert bases her opinion on information supplied by another," particularly a party, "the Court[ ] must focus on the reliability of the expert's foundation." *Black & Decker*, 2006 WL 5156873, at \*1. But despite the fact that this data on the number of fires involving Electrolux dryers supposedly came from Electrolux itself, Dr. Wood admittedly did nothing to independently verify the reliability of this information before she used it in her calculations.[6] This renders her statistical analysis unreliable and justifies excluding the opinions that rely on this information. *See Fail–Safe, L.L.C.*, 744 F.Supp.2d at 888 (stating that the defendant's expert's reliance on the defendant's own data, which he did not independently verify, rendered his opinion unreliable); *Braun Corp. v. Vantage Mobility Int'l, LLC*, No. 2:06–CV–50–JVB–PRC, 2010 WL 5287484, at \*7 (N.D.Ind. June 21, 2010) (recommending exclusion of the portions of the defendant's expert's opinion relying on a histogram prepared by the defendant when the expert used it without verifying or reviewing the underlying information), *report & recommendation adopted*, 2010 WL 5279974 (N.D.Ind. Dec. 17, 2010); *Lyman*, 580 F.Supp.2d at 726 (providing that an expert should have verified the data underlying the summary of sales data provided by defendant's counsel that he relied on in forming his opinion, and excluding his testimony regarding that

information); *see also Montgomery Cnty. v. Microvote Corp.*, 320 F.3d 440, 448 (3d Cir.2003) (affirming exclusion of expert testimony, on grounds that the data underlying his opinion was so unreliable that no reasonable expert could base an opinion on it, where the expert relied on a document but did not know the source or basis of the document).

██ Dr. Wood's failure to verify the data that Electrolux supposedly supplied to her is not the only fatal flaw in her statistical analysis. When conducting a comparative analysis, to meet the reliability that *Daubert* demands, an expert must "select samples that are truly comparable. To put it another way, care must be taken to be sure that the comparison is one between 'apples and apples' rather than one between 'apples and oranges.' " *Loeffel Steel Prods.*, 387 F.Supp.2d at 812 (quoting *Donnelly v. R.I. Bd. of Governors for Higher Educ.*, 929 F.Supp. 583, 591 (D.R.I. 1996)). Here, Dr. Wood obtained the number of fires involving all manufacturers' dryers from the NFPA report, which relies on NFIRS reports by firefighters, but received the number of fires involving Electrolux dryers from Electrolux itself, which provided the number of fires reported directly to it. Regardless of State Farm's argument that Electrolux's data under reports fires in its dryers, Dr. Wood's comparative analysis is fatally flawed because she compared two different *types* of data—(1) the data on all dryer fires derived and estimated from NFIRS reports by fire departments and (2) the data on Electrolux fires derived from only those fires reported to Electrolux. Although this second kind of data may be the

---

**6.** Indeed, in some instances, Dr. Wood apparently only went "through the law firm representing Electrolux," or Electrolux lawyers to obtain information or clarifications for her statistical analysis. (*See* Dr. Wood Dep. 21.)

In fact, for the most part, Dr. Wood is unable to recall direct conversations with any Electrolux employee. (Dr. Wood Dep. 22, 50, 52, 93, 107.)

type that manufacturers rely on in conducting statistical risk analysis, in Dr. Wood's comparative risk analysis in this case, using these two different types of data amounts to a comparison between "apples and oranges," which fails to meet *Daubert*'s reliability standard. *See id.*

Moreover, while Dr. Wood claims that this was the best available data (Def.'s Resp. in Opp. 6–7), State Farm points out that Dr. Wood *could have* obtained the data on Electrolux dryer fires from the same source as the data on fires involving all manufacturers' dryers because the NFIRS report forms include a section for reporting the brand, model, serial number, and year for the dryer involved in each fire (Pl.'s Mem. in Supp. 10), further suggesting the unreliability of her comparative analysis. *Cf. Cook Inc. v. Endologix, Inc.,* No. 1:09–cv–01248–TWP–DKL, 2012 WL 3948614, at *5 (S.D.Ind. Sept. 10, 2012) (finding that plaintiff's expert's calculation of a market share was based on reliable data and methods when the defendant did not provide any alternative data that would have been more reliable upon which the expert could have relied). Therefore, because of Dr. Wood's failure to independently verify the data she received from Electrolux and her comparison of two distinctly different types of data, the data underlying her risk analysis opinion is "so unreliable that no reasonable expert could base an opinion on them," justifying the exclusion of her opinions relying on that data. *Lyman,* 580 F.Supp.2d at 726 (quoting *In re TMI Litig.,* 193 F.3d at 697).

Dr. Wood's second statistical opinion—that relative to fire rates for all dryers, Electrolux dryers are not unreasonably dangerous—suffers from the same infirmities as her first one. Dr. Wood testified that this second opinion was simply a function of her statistical analysis as presented in her report. (Dr. Wood Dep. 45.) As

such, it is also based on unverified data from a party and a flawed comparative analysis, rendering it unreliable. Without this underlying analysis, Dr. Wood's opinion is nothing more than the "bottom line," which "supplies nothing of value to the judicial process." *See Zenith Elec. Corp.,* 395 F.3d at 419–20. Furthermore, with such an opinion—that Electrolux dryers are not unreasonably dangerous—Dr. Wood improperly opines with respect to an ultimate legal conclusion in the case—whether Electrolux dryers are in fact unreasonably dangerous. *Wielgus v. Ryobi Techs., Inc.,* No. 08 CV 1597, 2012 WL 3643682, at *4 (N.D.Ill. Aug. 23, 2012) (citing *United States v. Sinclair,* 74 F.3d 753, 757, 758 n. 1 (7th Cir.1996)); *see Good Shepherd Manor Found. v. City of Momence,* 323 F.3d 557, 564 (7th Cir.2003) (excluding expert testimony that consisted of legal conclusions); *Scottsdale Ins. Co. v. City of Waukegan,* 689 F.Supp.2d 1018, 1022 (N.D.Ill.2010) (stating that experts may provide opinions as to the ultimate factual issues in a case, but may not testify as to legal conclusions that will determine the outcome of the case).

And even if Dr. Wood's statistical opinions *were* reliable, they do not fit the facts of this case and, as such, would not assist the trier of fact. *See Chapman,* 297 F.3d at 687; *Hall,* 93 F.3d at 1342. State Farm alleges that the Slabachs' Electrolux gas dryer was defectively designed and that these defects caused lint to accumulate in areas not visible to the user and subsequently ignite. Dr. Wood's report does not address this claim, "but instead compares all Electrolux dryers (regardless of model or type) with all other dryers in the United States (again, regardless of model or type) regarding the frequency of dryer fires." *State Farm Fire & Cas. Co. v. Electrolux N. Am.,* No. 2:10–CV–01147 RSM, 2012 WL 161821, at *3 (W.D.Wash.

Jan. 4, 2012) (excluding these same two opinions from Drs. Wood and Steffey because they did not fit the facts of the case). This comparison is not limited to dryer fires caused by lint accumulation; it also includes all reported dryer fires, regardless of their cause. *Id.* Fires that do not result from lint accumulation near the heat source would not be relevant to "the alleged defects in the [Slabachs'] gas dryer, and a statistical comparison that includes such irrelevant data clearly does not 'fit' the facts of this case." *Id.*

Perhaps Dr. Wood's opinions would be relevant if the question before the Court was whether the Electrolux brand, as a *general* matter, is comparatively safer than other brands, but this is not at issue in this case; rather the central question posed here is whether the specific Electrolux model the Slabachs owned was defective, which Dr. Wood's opinions based on her statistical analysis do not speak to. *Id.* at *4. Accordingly, Dr. Wood's two statistical opinions do not meet the basic relevancy requirements of Federal Rule of Evidence 702 and, therefore, must be excluded on this basis as well. *Id.* at *3.

### C. Dr. Wood's Warnings Opinions Are Sufficiently Reliable

Besides challenging Dr. Wood's statistical opinions, State Farm also moves to exclude Dr. Wood's warnings opinions as unreliable and unsupportable. In her report, after reviewing the owner's guide and operating instructions accompanying the Slabachs' dryer and the warnings on the dryer itself, Dr. Wood states that "[t]he safety information contained within the Electrolux Owner's Guide, Operating Instructions, and on the product clearly communicates the need for proper installation and exhaust, the need to consistently clean and keep the dryer free of lint, and to have authorized personnel clean the dryer approximately every 18 months." (Dr. Wood

Warnings Report 5.) She then concludes that the "[w]arnings and safety information about factors associated with the dryer fires provided by Electrolux were reasonable and adequate in content, location, and format and were not defective." (Dr. Wood Warnings Report 6.)

State Farm argues that these opinions are unreliable because Dr. Wood merely accepted information that Electrolux provided to her without independently verifying it (Pl.'s Mem. in Supp. 16) and then deemed the content, location, and format of product literature and labels containing the warnings as reasonable, adequate, and not defective without considering the warnings' origination, designed purpose, intent, wording, or effectiveness (Pl.'s Reply 7). Along those same lines, State Farm notes that Dr. Wood does not opine about the effectiveness of the warnings and instructions. Based on this omission, State Farm concludes, without any supporting authority, that "to present evidence to the jury that the warnings are 'reasonable,' 'adequate,' and 'not defective,' even though they very well might be completely 'ineffective' does not meet the evidentiary standards set forth in [Federal Rules of Evidence] 702 and 703." (Pl.'s Reply 9.) Moreover, State Farm maintains that Dr. Wood's opinions fail to consider whether the warnings identify the hazard of lint accumulating in close proximity to the heat source or the necessity of disassembling the dryer to clean out the lint behind the drum frequently enough to prevent the risk of fire, which—according to State Farm—are the contested issues in the case. (Pl.'s Reply 7–8.) And, finally, State Farm argues that Dr. Wood has failed to test her opinions or subject them to peer review or publication. (Pl.'s Mem. in Supp. 16.)

Regarding State Farm's claim that Dr. Wood merely relied on information Elec-

trolux provided to her without independently verifying it—an argument it successfully made regarding Dr. Wood's statistical opinions—Dr. Wood's use of the safety information in forming her warnings opinions is significantly different than her use of the numbers given to her by Electrolux in her statistical risk analysis. There, Dr. Wood simply relied on the information Electrolux gave to her and did nothing to verify it *"before utilizing it in [her] calculations,"* which is impermissible. *Braun Corp.,* 2010 WL 5287484, at *7 (emphasis added). With her warnings opinions, Dr. Wood reviewed the warnings, owner's guide, and instructions associated with the Slabachs' Electrolux dryer to reach her conclusions—which is exactly what State Farm's *own* expert did in coming to his warnings conclusions. Unlike the number of dryer fires involving Electrolux dryers that Electrolux reported to Dr. Wood, there was nothing to verify about the safety information. As State Farm itself stated, "the content, location, and format of the product literature and labels ... are what they are." (Pl.'s Reply 7.)

▆▆▆ As to State Farm's contention that Dr. Wood opines as to the adequacy of the warnings without considering their origination, designed purpose, intent, wording, or effectiveness, under Indiana law, when determining the adequacy of warnings, courts consider "the adequacy of the factual content, the adequacy of the manner in which the content is expressed, and the adequacy of the method of conveying these expressed facts." *Jarrell v. Monsanto Co.,* 528 N.E.2d 1158, 1162–63 (Ind.Ct.App.1988) (citing *Ortho Pharm. Corp. v. Chapman,* 180 Ind.App. 33, 388 N.E.2d 541 (1979)); *see generally* Am. L. Prod. Liab. § 33:3 (3d ed. 2012) (stating that factors relevant to the adequacy of a warning "include that the warning adequately indicates the scope of the danger, reasonably communicates the extent or seriousness of the harm that could result from misuse, and adequately alerts a reasonably prudent person to the danger"). In concluding that the warnings and safety information associated with the Slabachs' Electrolux dryer were adequate in content, location, and format, Dr. Wood expressly considered these factors.

Drawing from the *American National Standard for Product Safety Signs and Labels* and other guidance documents, Dr. Wood indicated that warnings should identify the hazard, the actions taken to avoid the hazard, and the consequences of failing to take these actions. (Dr. Wood Warnings Report 3.) Applying that standard to the factual content of the warnings and instructions here, Dr. Wood found that the safety information clearly identifies fire as a potential hazard; provides numerous steps to reduce this risk, including repeated iterations of the importance of removing lint from the dryer and methods of doing so; and indicates that the consequences of not taking these actions include injury or death. (Dr. Wood Warnings Report 3.) As to the manner in which this content is expressed, Dr. Wood noted that the safety information is presented using common formatting techniques that assist the reader in processing information, such as using headings, "signal words," and safety alert symbols. (Dr. Wood Warnings Report 3.) And the method used to convey these facts includes giving specific instructions in the owner's guide about preventing fires, required care and cleaning, items that should not be dried, and further drying procedures as well as a customer instruction checklist. (Dr. Wood Warnings Report 3–4.) Dr. Wood further pointed out that Electrolux provides specific warnings on the inside of the dryer that include a safety alert symbol and the

word "WARNING," which instruct users not to dry certain materials and inform them that the dryer produces combustible lint. (Dr. Wood Warnings Report 4.)

Therefore, despite State Farm's claims to the contrary, Dr. Wood's failure to consider the warnings' origin, purpose, intent, wording, or effectiveness do not make her opinion on their adequacy unreliable as she properly opines on the adequacy of the factual content of the warnings and safety information, the adequacy of the manner in which this content was expressed, and the adequacy of the method of conveying these facts. *See Jarrell*, 528 N.E.2d at 1162–63. Furthermore, according to the American Law of Products Liability treatise, "an adequate warning is one that includes the directions, communications, and information essential to enable the user to use the product safely so that, *had the injured person complied with the warning,* there would have been no injury." AM. L. PROD. LIAB. § 33:3 (emphasis added). This suggests that an adequate warning need not compel compliance or be effective in changing a consumer's behavior. As such, that Dr. Wood does not opine to the *effectiveness* of the warnings when concluding that they are adequate does not mean that she failed to meet the evidentiary standards of Rules 702 and 703. Rather, this is simply a basis for cross-examination. *See Gayton v. McCoy,* 593 F.3d 610, 616 (7th Cir.2010) ("Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination.").

State Farm further maintains that Dr. Wood's opinion fails to address the contested warnings issues in the case—namely whether the warnings identify the hazard of lint accumulating in close proximity to the heat source or the necessity of disassembling the dryer to clean out the lint behind the drum. (Pl.'s Reply 7–8.) But that is State Farm's theory of defective warnings, and Dr. Wood is not required to accept that theory in reaching her conclusions. Nor is a warning required to include an explanation of the exact danger or all the attendant risks that may result in harm. AM. L. PROD. LIAB. § 33:3. Rather, the question is whether the warnings "make apparent the potential harmful consequences" and whether the warning is "of such intensity to cause a reasonable man to exercise for his own safety caution commensurate with the potential danger." *Jarrell*, 528 N.E.2d at 1162 (citation omitted).

In her report, Dr. Wood acknowledges that the NFPA and the Consumer Product Safety Commission ("CPSC") have recognized that lint accumulation within dryers may result in fires and that the CPSC recommends that users clean the lint screen before or after drying each load of clothes, clean behind the dryer where lint can build up, and have a service person clean the interior of the dryer periodically to minimize lint accumulation. (Dr. Wood Warnings Report 5.) Dr. Wood then concludes that "the warnings and safety information provided by Electrolux induce and emphasize the concerns identified in the analysis of dryer-related incidents conducted by the NFPA and CPSC and Electrolux disseminates this information to purchasers of their clothes dryers." (Dr. Wood Warnings Report 5.) As such, Dr. Wood properly opines as to whether the warnings and safety information "make apparent the potential harmful consequences" of lint accumulation and, with her conclusion that the warnings are adequate in content, location, and format, also opines as to whether the warning appropriately conveys the nature of this risk to consumers so they can exercise the necessary caution. *See Jarrell*, 528 N.E.2d at 1162 (citation omitted).

State Farm's argument that Dr. Wood's opinions have not been tested or subjected to peer review or publication appears to be inappropriate as the "inquiry envisaged by Rule 702 is a flexible one, and a strict application of the *Daubert* factors is not always warranted, especially when the expert relies on [her] experience in the relevant field." *Tober v. Graco Children's Prods., Inc.,* No. 1:02–CV–1682–LJM–WTL, 2004 WL 1987239, at \*11 (S.D.Ind. July 28, 2004) (citing *Smith,* 215 F.3d at 719) (finding inappropriate the application of the *Daubert* factors to the opinion of a human factors expert who concluded that a product's warning labels and instructions were inadequate). In the instant case, Dr. Wood "is not providing scientific testimony that can be readily tested by the *Daubert* factors. Instead, Dr. [Wood] relies on [her] extensive experience and expertise in the relevant field." *Id.* As such, a strict application of the *Daubert* factors is not warranted here. *Id.*

Ultimately, State Farm's various challenges to Dr. Wood's opinions concerning the warnings attack the substance of her conclusions rather than the reliability of the methodology she used, and the former (unlike the latter) are something for the jury to consider. *See Smith,* 215 F.3d at 718 ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact. . . ."). Undoubtedly, State Farm will have ample opportunity to test the accuracy of Dr. Wood's opinions through the traditional methods at trial, such as vigorous cross-examination, the presentation of contrary evidence, and careful instructions on the burden of proof. *Lapsley,* 689 F.3d at 805 (quoting *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786); *Tober,* 2004 WL 1987239, at \*11. Accordingly, under the circumstances of this case, Dr. Wood's proposed testimony on warnings is admissible.

## V. CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that Plaintiff's Motion to Exclude Dr. Christine T. Wood from Testifying at Trial (Docket # 92) be GRANTED with regards to Dr. Wood's statistical opinions and DENIED concerning Dr. Wood's opinions about the warnings.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for Plaintiff and Defendant. NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings or recommendations. FED. R. CIV. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *Lorentzen v. Anderson Pest Control,* 64 F.3d 327, 330 (7th Cir.1995); *Egert v. Conn. Gen. Life Ins. Co.,* 900 F.2d 1032, 1039 (7th Cir. 1990).

SO ORDERED.

Entered this 5th day of November, 2012.