In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1965

HOWARD PILTCH, *et al.*,

*Plaintiffs-Appellants,*

*v.*

FORD MOTOR COMPANY, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:11-cv-00001-JTM-CAN — **James T. Moody**, *Judge.*

ARGUED DECEMBER 1, 2014 — DECIDED FEBRUARY 11, 2015

Before BAUER, KANNE, and HAMILTON, *Circuit Judges.*

BAUER, *Circuit Judge.* Howard Piltch and Barbara Nelson-Piltch (the "Piltches") were traveling in their 2003 Mercury Mountaineer in February 2007 when they hit a patch of black ice, causing the car to slide off the road and into a wall. Upon impact, none of the car's air bags deployed and both Piltches were injured. The Piltches filed the present action in Indiana state court against Ford Motor Company ("Ford") in 2010, alleging the vehicle was defective under Indiana law. Ford

removed the action to federal court, and shortly thereafter moved for summary judgment. On March 28, 2014, the district court granted Ford's summary judgment motion holding that, without expert testimony, the Piltches could not create an issue of fact as to proximate cause. On appeal, the Piltches contend that (1) they state a claim for relief under the Indiana Products Liability Act ("IPLA"); (2) there is sufficient circumstantial evidence of a defective product that expert testimony is not required; (3) they are not required to produce expert testimony to establish proximate cause; and (4) the doctrine of *res ipsa loquitur* applies, raising an inference of negligence on the part of Ford. We affirm.

## I.  BACKGROUND

The Piltches were co-owners of a 2003 Mercury Mountaineer. While driving the Mountaineer in 2006, the Piltches were involved in a car accident in which the air bags did not deploy. Following the accident, the Piltches had the vehicle repaired. They did not confirm whether the restraint control module, which monitors a crash and decides whether to deploy air bags, was reset during or after repairs after the 2006 collision. But Mr. Piltch explained that it was his understanding that "whatever needed to be reset in the Mercury Mountaineer … was, in fact, reset."

A year later in 2007, the Piltches were involved in another accident after driving over some black ice. This time, their Mountaineer did a 360-degree turn and struck a low wall. The vehicle ricocheted off the wall, slid down a hill, and collided with several trees before coming to a rest. The vehicle's air bags again did not deploy during or after the accident. As a

result of the accident, Mr. Piltch broke several vertebrae and Mrs. Piltch sustained neurological injuries. After this crash, the Piltches had their Mountaineer repaired at the same shop that had repaired the car after the 2006 accident.

In 2009, the Piltches sold the Mountaineer. The buyer happened to be a mechanic who reprogrammed the vehicle's blackbox, wiping any data that might remain from either crash.

In February 2010, the Piltches sued Ford in federal court, alleging the Mountaineer's air bags were defective and enhanced the injuries they suffered as a result of the 2007 accident. Due to a deficient jurisdictional statement, the court dismissed the complaint without prejudice. The Piltches again filed suit in December 2010, this time in state court, and Ford removed the case to federal court. During discovery, the Piltches never served any expert reports, despite obtaining an extension of the expert-disclosure deadline.

Ford moved for summary judgment in November 2011, arguing that the Piltches could not prove a *prima facie* case of design or manufacturing defect without expert testimony, nor could they prove their injuries were more severe than they would have been without the alleged defect. In response, the Piltches argued they did not need an expert. They asserted that their circumstantial evidence, namely the Mountaineer's owner's manual and Mr. Piltch's testimony, created genuine issues of fact as to defect and proximate cause. The Piltches also argued that the jury could infer a defect under the doctrine of *res ipsa loquitur*.

The district court granted Ford's motion for summary judgment on all claims. Specifically, the court held that the

Piltches' circumstantial evidence was insufficient to go beyond speculation and create a legal inference as to proximate cause. As to *res ipsa loquitur*, the court held that the Piltches' circumstantial evidence was not enough to negate all possible causes other than defect for the air bags' failure to inflate. This appeal followed.

## II. DISCUSSION

We review a district court's grant of summary judgment *de novo* in the light most favorable to the non-moving party. *Ellis v. DHL Express Inc.*, 633 F.3d 522, 525 (7th Cir. 2011). Summary judgment is only appropriate if there is no genuine issue of material fact. *Id*.

The Piltches present four issues on appeal; the first three can be addressed in a single discussion as to whether the circumstantial evidence, without support from expert testimony, creates a genuine issue of material fact for their claims under the IPLA. We will separately address the fourth issue of *res ipsa loquitur*.

### A. Expert Testimony

Because we are sitting in diversity, Indiana law applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) (holding a federal court sitting in diversity must apply the substantive law of the state in which it sits). The IPLA governs all actions brought by a user or consumer against a manufacturer for physical harm caused by a product, regardless of the legal theory upon which the action is brought. *See* Ind. Code § 34-20-1-1.

Under the IPLA, the plaintiff must establish that "(1) he or she was harmed by a product; (2) the product was sold 'in a

defective condition unreasonably dangerous to any user or consumer'; (3) the plaintiff was a foreseeable user or consumer; (4) the defendant was in the business of selling the product; and (5) the product reached the consumer or user in the condition it was sold." *Bourne v. Marty Gilman, Inc.*, 452 F.3d 632, 635 (7th Cir. 2006) (referencing Ind. Code § 34-20-2-1). A plaintiff can satisfy the second element by showing a design defect, a manufacturing defect, or a failure to warn. *Hathaway v. Cintas Corp. Serv., Inc.*, 903 F. Supp. 2d 669, 673 (N.D. Ind. 2012). *See also Natural Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 161 (Ind. Ct. App. 1997). A plaintiff is also required to prove that his injuries were proximately caused by the defect (in the cases of manufacturing defect and failure to warn) or breach of duty (in the case of design defect). *See Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007). Finally, and particularly pertinent to the issues raised on appeal, expert testimony on an issue is required when the issue is not within the understanding of a lay person. *Daub v. Daub*, 629 N.E.2d 873, 878 (Ind. Ct. App. 1994) (requiring expert testimony on issue of cause outside understanding of lay person); *Owens v. Ford Motor Co.*, 297 F. Supp. 2d 1099, 1103–04 (S.D. Ind. 2003) (requiring expert testimony where existence of a defect depends on matters beyond understanding of lay person).

The Piltches invoke both design defect and manufacturing defect theories in their suit. *Cook v. Ford Motor Co.*, 913 N.E.2d 311, 319 (Ind. Ct. App. 2009) ("A product may be defective within the meaning of the [Indiana Product Liability] Act because of a manufacturing flaw, a design defect, or a failure to warn of dangers in the product's use."). To demonstrate a design defect under Indiana law, "the plaintiff must compare

the costs and benefits of alternative designs" and "show that another design not only could have prevented the injury but also was cost-effective under general negligence principles." *Pries v. Honda Motor Co.*, 31 F.3d 543, 545–46 (7th Cir. 1994). Here, not only did the Piltches fail to produce alternative air bag designs, but they also failed to introduce expert testimony on the question of design defect. Without expert testimony, a lay jury would be unable to compare the costs and benefits of supposed alternative air bag designs with the Mountaineer's actual air bag design. *See Whitted v. General Motors Corp.*, 58 F.3d 1200, 1206 (7th Cir. 1995) (affirming summary judgment where plaintiffs failed to present evidence of design defect and that an alternative design was cost effective). *See also Hathaway*, 903 F. Supp. 2d at 675 (granting summary judgment against plaintiff's design defect claim where plaintiff submitted no evidence indicating cost effectiveness of alternative design). Similarly, a lay jury would be unable to discern from circumstantial evidence whether another air bag design could have prevented the injury. Thus, without expert testimony, the Piltches' design defect claim cannot survive summary judgment.

The Piltches' manufacturing defect claim fares no better. To demonstrate a manufacturing defect, the plaintiff must show that "the product … deviates from its intended design." *Id*. at 673 (applying Indiana law and citing *Restatement (Third) of Torts: Products Liability* § 2(a) (1988)). The Piltches contend that the Mountaineer's owner's manual establishes the intended design of the air bags, and that the state of the air bags during and after the 2007 collision indicates a departure from that intended design.

Citing *Cansler v. Mills*, 765 N.E.2d 698 (Ind. Ct. App. 2002), the Piltches argue that this evidence, taken together, raises a genuine issue of material fact as to defect even in the absence of expert testimony. In *Cansler*, the court found that the plaintiff designated sufficient circumstantial evidence on the issue of whether the air bags in question were defective, rendering expert testimony unnecessary to create a triable issue of fact. *Id*. at 706–07. The circumstantial evidence included the plaintiff's testimony about the speed of the car just before the collision and a mechanic's testimony about the damage to the vehicle after the collision. *Id*. at 706. Though not an expert, the mechanic was deemed a "skilled witness" who could testify to opinions or inferences based on facts within his personal knowledge, in addition to his observations. *Id*. at 703–04 (defining a "skilled witness" as "a person with 'a degree of knowledge short of that sufficient to be declared an expert … but somewhat beyond that possessed by the ordinary jurors.'" *Mariscal v. State*, 687 N.E.2d 378, 380 (Ind. Ct. App. 1997)). The mechanic testified that he had almost two decades of experience examining automobile wrecks with deployed air bags. *Cansler*, 765 N.E.2d at 702. After examining the plaintiff's car three to four days after the accident, he opined that "based on his observations of other vehicles that had been in accidents severe enough to cause front frame damage [like the plaintiff's], the air bag in [the plaintiff's] Corvette should have deployed." *Id*. The plaintiff also presented the car's owner's manual, which detailed the conditions that would warrant air bag deployment, including the threshold velocity of impact that would trigger deployment.

The Piltches' circumstantial evidence is not analogous to that in *Cansler*. Most notably, the Piltches do not provide testimony about the accident other than their own. We also do not have testimony on the state of the car following the collision. This is especially problematic considering the Piltches preserved neither the Mountaineer nor, critically, the Mountaineer's blackbox, which could have contained details about the crash. Without this information, and without an accident reconstruction expert or otherwise "skilled witness" to fill in some of these blanks, a lay person would be unable to discern whether the circumstances of the crash should have triggered air bag deployment or not. Furthermore, the presentation of the Mountaineer's owner's manual does nothing to elevate this evidence out of the realm of speculation. Unlike the manual in *Cansler*, the conditions for air bag deployment in the Mountaineer's manual are written in broad generalities. The manual merely states that the air bags are designed to activate when the vehicle sustains sufficient longitudinal deceleration. However, it neither defines "sufficient," nor specifies the precise impact speeds at which the air bags are expected to deploy.

Finally, in addition to showing a defect, both theories of liability require a showing that the defect proximately caused the Piltches' injuries to survive summary judgment. The Piltches allege a "crashworthinesss" case. The crashworthiness doctrine expands the proximate cause element, *see Barnard v. Saturn Corp.*, 790 N.E.2d 1023, 1032 (Ind. Ct. App. 2003), and imposes liability for design defects that enhance injuries from a collision, but did not cause the collision in the first place. *See Whitted*, 58 F.3d at 1205; *Montgomery Ward & Co. v. Gregg*, 554

N.E.2d 1145, 1154 (Ind. Ct. App. 1990). The plaintiff's burden of proof for an enhancement injury claim is as follows:

> First, the plaintiff must prove that the manufacturer placed into the stream of commerce a defectively designed, unreasonably dangerous product. Second, the plaintiff must prove that a feasible safer alternative product design existed. Third, the plaintiff must prove that after the original impact or collision the defectively designed product proximately caused (i.e. enhanced) the injuries that resulted.

*Barnard*, 790 N.E.2d at 1032 (citation omitted).

As discussed above, the Piltches cannot establish the existence of a defect without expert testimony. Because they cannot establish a defect, they cannot meet their burden of proof for an enhanced injury claim and we need not discuss whether they are able to establish proximate cause through their presented circumstantial evidence. However, even if the Piltches established a design defect, under the facts of this case, without expert testimony, a lay juror could not distinguish between the injuries caused by the collision and the enhanced injuries caused by the air bags' failure to deploy without engaging in pure speculation. The same would be true even if the Piltches had offered evidence of a manufacturing defect. *See U-Haul Int'l, Inc. v. Nulls Mach. & Mfg. Shop*, 736 N.E.2d 271, 285 (Ind. Ct. App. 2000) (affirming summary judgment in manufacturing defect case where plaintiff provided no expert opinion sufficient to present a question of fact with respect to proximate cause).

In sum, the Piltches ask the court to find their own testimony combined with the manual's instruction sufficient to permit an inference of defect and of proximate cause. But it is not—without expert testimony, a jury would only be able to speculate as to the viability of the Piltches' IPLA claims.

## B.  *Res ipsa loquitur*

To bring a claim under the doctrine of *res ipsa loquitur*, a plaintiff must show that the occurrence is "one which in the ordinary course of business does not happen if those who control the circumstances use proper care." *Gary Cmty. Sch. Corp. v. Lardydell*, 8 N.E.3d 241, 247 (Ind. Ct. App. 2014). A plaintiff must also show that the injuring instrumentality was in the exclusive control of the defendant at the time of injury. *Whitted*, 58 F.3d at 1207.  The doctrine of *res ipsa loquitur* may be applied in the "rare instances" in which "circumstantial evidence may produce reasonable inferences upon which a jury may reasonably find that a defendant manufactured a product containing a defect." *Id.* at 1208.

In *Whitted*, we held that the plaintiff, suing over an allegedly defective seat belt, "did not present enough evidence to establish that Defendants retained control or dominion over the seat belt—that is, that six years of invariable use did not disturb Defendants' influence or authority over the product." *Id*. Although the plaintiff presented evidence that the seat belt appeared to be in good condition and had not demonstrated problems before, we held that this was not enough to "nullify enough of the probable explanations of the seat belt break." *Id*. The Piltches have done even less to nullify other explanations for the air bags' failure to inflate. Given that the Piltches did

not, or perhaps could not, confirm that the air bag mechanism was not reset after their 2006 accident, it remains a reasonable possibility that the air bag failed to deploy due to not being reset. What's more, on this record a jury could only speculate as to whether the circumstances of this accident should have triggered deployment of the air bags in the first place, as previously discussed. Thus, the Piltches' presentation of circumstantial evidence is not, as the district court put it, "one of the 'rare instances' where it is enough to negate all possible causes other than a product defect." *Piltch v. Ford Motor Co.*, 11 F. Supp. 3d 884, 892 (N.D. Ind. 2014) (quoting *Whitted*, 58 F.3d at 1208).

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Ford.