In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 17-1990

CHERYL DALTON,

*Plaintiff-Appellant,*

*v.*

TEVA NORTH AMERICA, *et al.,*

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:15-cv-00162 — **Richard L. Young**, *Judge.*

---

ARGUED FEBRUARY 13, 2018 — DECIDED JUNE 4, 2018

---

Before SYKES and BARRETT, *Circuit Judges*, and GRIESBACH,
*Chief District Judge.* [*]

BARRETT, *Circuit Judge.* Cheryl Dalton appeals the summary judgment entered against her in this products liability case. The district court held that Dalton's claims failed under Indiana law because she did not provide expert evidence on

---

[*] Of the Eastern District of Wisconsin, sitting by designation.

the issue of causation. Dalton contends that she did not have to provide expert evidence because the cause of her injuries would be readily apparent to a lay juror. Because the district court correctly applied Indiana law, we affirm.

## I.

In 2007, Dalton's doctor implanted a ParaGard Intrauterine Device ("IUD") in her uterus. An IUD is a form of long-term birth control, and the one Dalton used is manufactured, marketed, and distributed by a group of corporate affiliates whom we will collectively call "Teva." It is not clear what role each of those corporate affiliates plays in relation to this IUD, but this appeal does not require us to sort that out.

Dalton became dissatisfied with the IUD in 2013 and asked her doctor to remove it. The doctor did so by grasping the IUD's strings with a ring forcep and pulling the IUD down. The procedure, however, removed only part of the IUD. A piece had broken off either before or during the removal, and that piece was now lodged in her uterus. Dalton's doctor advised her that removing the remaining portion of the IUD would require a hysterectomy.

Dalton sued Teva in federal court. She asserted three products liability claims, which she styled as "strict liability," "strict products liability failure to warn," and "manufacturer's defect." Under the case-management plan submitted by the parties and adopted by the district court, Dalton had until November 18th to disclose any expert witness and serve the expert witness report required by Federal Rule of Civil Procedure 26(a)(2). When Dalton made no expert disclosures, Teva moved for summary judgment. It argued that Indiana law requires expert testimony to show causation in

products liability actions, and Dalton's failure to procure any meant that she could not prove an essential element of her claims. Dalton responded that the causation issue was so straightforward that expert testimony was unnecessary. The district court granted summary judgment to Teva.

## II.

It has been a struggle to get the information we need to determine whether subject matter jurisdiction exists in this case. Because the claims in this suit arise under state law, Dalton relied on the diversity jurisdiction statute, 28 U.S.C. § 1332, to bring her case in federal court. That statute requires complete diversity among the parties, and proving the citizenship of each party is Dalton's burden.[1] *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008). There is no problem with the five defendants whom Dalton sued under the name "John Doe." Those defendants were nominal parties who served as placeholders in the event that Dalton found additional people to sue, and we have held that the citizenship of such defendants can be disregarded for diversity jurisdiction. *Moore v. Gen. Motors Pension Plans*, 91 F.3d 848, 850 (7th Cir. 1996). But Dalton must establish the citizenship of the eight other defendants who are purportedly within the Teva corporate family—Teva Pharmaceuticals USA Inc., Teva Neuroscience Inc., Teva Women's Health LLC, and so on.

Dalton's complaint did not allege the citizenship of these defendants. It asserted that the defendants as a group "are incorporated and have their headquarters in the state of Pennsylvania or another state different from the Plaintiff."

---

[1] Dalton's complaint satisfied the amount-in-controversy requirement because it sought more than $75,000 in damages.

But a complaint may not merely allege diversity of citizenship without identifying the defendants' states of citizenship, *McCready v. eBay, Inc.*, 453 F.3d 882, 890–91 (7th Cir. 2006), and it is difficult to perceive any material difference between that practice and the bare assertion that the defendants are citizens of "another state different from the Plaintiff." And even if we assume that all eight named defendants are corporations, what matters for the citizenship of a corporation is its state of incorporation and its principal place of business, not its "headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). Unfortunately, the citizenship of the Teva defendants was never clarified in the district court.

Dalton's opening brief on appeal was similarly deficient. In any case premised upon diversity jurisdiction, Circuit Rule 28(a)(1) requires the appellant to include a jurisdictional statement identifying "the jurisdictional amount and the citizenship of each party to the litigation." Even though we have clearly stated that "an appellant's naked declaration that there is diversity of citizenship is never sufficient," *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 533 (7th Cir. 2007), Dalton stated only that the case "involves a diversity of citizenship." After we ordered her to file a new jurisdictional statement, she asserted her own citizenship (Indiana), the citizenship of three corporate defendants (Pennsylvania), and the fact that two other corporate defendants were just prior names of those three Pennsylvania citizens. Teva's brief clarified that the three Pennsylvania citizens identified by Dalton are actually citizens of both Pennsylvania and Delaware. But rather than stating the citizenship of the remaining three defendants, Teva merely asserted that they were never served and did not appear in the district court. That may be, but because those parties were not dismissed from the case,

we must still account for their citizenship. By failing to address it, Teva violated Circuit Rule 28, which obligates an appellee to provide a complete and correct jurisdictional statement when the appellant's statement falls short.

We raised these problems at oral argument, and in post-argument supplemental briefing, the parties finally accounted for the three remaining defendants. We now know that one unserved defendant is just the past name of another unserved defendant, who is a citizen of Delaware and Kansas, and that the final unserved defendant does not exist and has never existed. Having confirmed that no defendant is a citizen of Indiana, we are finally able to conclude that subject-matter jurisdiction exists. It should not have taken us two rounds of jurisdictional statements, oral argument, and supplemental briefing to extract this basic information from the parties.

## III.

Dalton's claims arise under the Indiana Products Liability Act, which governs all consumer actions against a manufacturer for physical harm caused by a product, "regardless of the substantive legal theory or theories upon which the action is brought." *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 809 (Ind. 2007) (quoting IND. CODE § 34-20-1-1); *see also Piltch v. Ford Motor Co.*, 778 F.3d 628, 632 (7th Cir. 2015) (applying the Indiana Products Liability Act to claims alleging "a design defect, a manufacturing defect, or a failure to warn"). Under any of those theories, she must prove that her injury was proximately caused by whatever defect or breach of duty underlies her claim. *Id.*; *see also Rushford*, 868 N.E.2d at 810. Dalton lost below because, believing it was unnecessary, she chose not to rely on expert testimony to prove the causa-

tion element in this case. Whether she is right about that depends on what the Indiana Products Liability Act requires.

The Act insists upon expert testimony when an issue "is not within the understanding of a lay person." *Piltch*, 778 F.3d at 632. Causation is often such an issue. *See, e.g.*, *id.* at 634; *U-Haul Int'l, Inc. v. Nulls Mach. & Mfg. Shop*, 736 N.E.2d 271, 285 n.3 (Ind. Ct. App. 2000); *Daub v. Daub*, 629 N.E.2d 873, 877–78 (Ind. Ct. App. 1994). If the circumstantial evidence in a case would require a lay juror to engage in "pure speculation" to find causation, then expert evidence is necessary under Indiana law. *Piltch*, 778 F.3d at 634.

Dalton contends that "proximate cause is obvious" in this case because it involves "uncomplicated facts that lead to only on[e] conclusion." In Dalton's view, a juror could look at a broken IUD and plainly see that some error of Teva's caused the break. But as the district court held, that is exactly the sort of speculation that is insufficient to sustain a products liability action under the Indiana law. Dalton provides no explanation for how a lay juror faced with a broken IUD could identify the cause of the break—maybe the IUD was damaged after coming into the possession of the physician, maybe human error resulted in damage or some other problem during implantation or removal, or maybe there's another explanation entirely.

This case is far removed from situations in which a causation issue is so obvious that a plaintiff may forgo expert testimony. *See, e.g.*, *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 702 (7th Cir. 2015) ("[W]hen a plaintiff suffers from a broken leg or a gash when hit by a vehicle, he doesn't need to produce expert testimony." (quoting *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010)). It is far more like *Piltch*, a

products liability case in which we held that a similarly sparse set of facts was insufficient to override the need for expert evidence to show defect and causation. There, the plaintiffs suffered serious injuries when their SUV crashed. *Piltch*, 778 F.3d at 631. They contended that a manufacturing or design defect had prevented their airbags from deploying, which increased the severity of their injuries. *Id.* But the plaintiffs designated no expert witness; instead, they chose to rely on their experience in the accident and the owner manual's statement that the airbags were supposed to deploy in a crash. *Id.* We held that the plaintiffs could not show the existence of a design defect without having an expert witness testify about potential alternative designs, and they could not show the existence of a manufacturing defect without expert testimony (or some other, more persuasive circumstantial evidence) showing that the airbags as designed should have deployed in the crash. *Id.* at 632–33.

Just as in *Piltch*, a judgment for the plaintiff in this case would require the jurors to speculate about the existence of a defect, the reason for the proven defect, and that the proven defect caused the break. Contrary to Dalton's contention, the issue of causation in her case is not obvious. The district court was therefore correct to hold that Dalton could not prove her tort claims without expert testimony.

## IV.

Dalton's remaining argument is difficult to parse. She appears to contend that even if expert testimony is necessary on her manufacturing-defect claim, it is unnecessary on her claims that are denominated as "strict liability" and "failure to warn." Her argument on this point is only one sentence,

and inadequately briefed arguments are forfeited. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012).

Dalton shifts gears in her reply brief. This argument is also unclear, but she seems to fault the district court's opinion for failing to address why it was entering summary judgment on her failure-to-warn and strict-liability claims. She has misunderstood the district court's opinion. The court discussed Dalton's wholesale failure to provide evidence of causation, and all of her claims require proof of causation. *Kovach v. Caligor Midwest*, 913 N.E.2d 193, 199 (Ind. 2009) (holding that a plaintiff in a failure-to-warn case must establish causation); *Rushford*, 868 N.E.2d at 810 ("[W]ith respect to strict liability actions, the plaintiff must prove that … the defective condition was the proximate cause of the plaintiff's injuries."). Even if we were to consider an argument raised for the first time in a reply brief, there would be no cause for second-guessing here.

The district court's judgment is AFFIRMED.