In the

# United States Court of Appeals
### For the Seventh Circuit

---

No. 18-2641

DONALD N. TIMM and MARY K. TIMM,

*Plaintiffs-Appellants*,

*v.*

GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD.,
an Ohio-based Corporation, *et al.*,

*Defendants-Appellees*.

---

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:14-cv-232 — **Philip P. Simon**, *Judge*.

---

ARGUED APRIL 5, 2019 — DECIDED AUGUST 6, 2019

---

Before FLAUM, KANNE, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Donald and Mary Timm sustained serious injuries in a horrific motorcycle accident. Believing defects with the motorcycle and its rear tire caused the accident—and that their injuries were especially severe because of a defect with their helmets—the Timms brought a products liability action under Indiana law against numerous defendants involved in the sale and manufacture of the motorcycle,

its rear tire, and the helmets they wore at the time of the accident. Concluding that the Timms failed to present admissible expert testimony to support their claims, the district court entered summary judgment for the defendants. We affirm.

**I**

On July 10, 2013, Donald and Mary Timm set off on a cross-country trip on their Harley-Davidson Ultra Classic. The Timms intended to drive from their home in Dyer, Indiana to Salt Lake City, Utah. While crossing Nebraska, the couple suffered a catastrophic accident when the motorcycle's rear tire sustained a puncture and rapidly deflated, leading Donald to lose control of the motorcycle and crash into a concrete median barrier. Mary flew off the motorcycle while Donald remained attached to the bike as it slid along the highway. Though both riders were wearing helmets, each sustained serious head injuries. In addition to suffering a traumatic brain injury, Donald sustained facial fractures and a cervical spine injury.

A few months later, the Timms received notice that the helmets they were wearing at the time of the accident—Ultra Low Profile Outlaw Motorcycle Half Helmets—were recalled. The Timms purchased the helmets two years earlier. Mary purchased her helmet through a website called LeatherUp.com (owned by Nanal, Inc.). Donald purchased his helmet through a different internet retailer, which is not a party to this suit. A company named Tegol imported and distributed both helmets. In its recall notice, Tegol explained that the Outlaw helmets failed to conform to certain Department of Transportation standards and warned that riders "may not be adequately protected in the event of a crash."

The Timms then brought a products liability action against Tegol, Nanal, and fourteen other corporate and individual defendants involved in the manufacture, distribution, and sale of Outlaw helmets (which we will collectively call the helmet defendants). Advancing claims under the Indiana Products Liability Act, the Timms alleged that their injuries would have been less severe had their helmets complied with federal safety standards and that the helmet defendants were negligent in their recall efforts. The Timms also asserted claims against Harley-Davidson, the motorcycle manufacturer, and Goodyear Dunlop (now known as Sumitomo Rubber USA), the tire manufacturer, contending that defects in the motorcycle and rear tire caused the accident.

Beginning with their helmets, the Timms pressed several claims, including design defect and manufacturing defect. To show that the helmets enhanced their injuries, the Timms emphasized the recall as well as the sheer severity of the injuries they sustained in the accident. But they did not present any expert testimony to show that, because of a defect with their helmets, their injuries were worse than they otherwise would have experienced in such a severe motorcycle crash. This omission, the district court concluded, was fatal to their claims because "a lay juror would not be able to distinguish between the injuries caused by the motorcycle accident and the enhanced injuries caused by the alleged defect in the helmets without engaging in speculation."

This conclusion, the district court reasoned, found support in the fact that the helmet defendants offered their own medical expert, who opined that the Timms' injuries were the type he would expect following such a serious motorcycle accident, even if they had been wearing helmets that complied

with all safety standards. The court accordingly entered summary judgment in favor of the helmet defendants on the Timms' manufacturing and design defect claims. The court also entered judgment for the defendants on the Timms' claims alleging negligent recall and failure to comply with federal safety standards, concluding that the Indiana Products Liability Act permits neither claim.

Turning to the allegations against Harley-Davidson and Goodyear, the Timms asserted that the motorcycle's rear tire (a Dunlop D402 tire) was defective and unreasonably dangerous because, following a puncture, it allowed for both excessive air leakage and the tire to unseat—or come free—from its rim. These defects, they maintained, caused Mr. Timm to lose control of the motorcycle and crash. The Timms further alleged that the motorcycle itself was defectively designed because it lacked a tire pressure monitoring system, which would have alerted Donald to the sudden loss of air in the tire before he lost control. To support these claims, the Timms proposed two experts: William Woehrle, a tire specialist, and Dr. Daniel Lee, an accident reconstructionist. In his report, Woehrle opined on how and when the tire became unseated from the rim and the need for a tire pressure monitoring system. Dr. Lee likewise sought to testify about the ultimate cause of the accident and to share his opinion that every motorcycle should be equipped with a tire pressure monitoring system.

Harley-Davidson and Goodyear filed motions to exclude Woehrle's and Lee's opinions, arguing they lacked the reliability required by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Following a hearing, the district court agreed. The court concluded

that Woehrle's opinion that manufacturing defects caused the tire to unseat from the rim upon being punctured "appear[ed] to be based on nothing more than his subjective belief and unsupported speculation," and thus "fail[ed] to adhere to any of the *Daubert* guideposts." The court also excluded Woehrle's opinion on the tire pressure monitoring system, reasoning that while Woehrle had expertise with respect to tires, he lacked qualifications related to motorcycles more generally. The district court judge also determined that Woehrle's opinions failed to comport with Rule 702 "because they [were] not based on scientifically valid methodologies."

The court similarly excluded Dr. Lee's testimony, finding that he lacked tire-related qualifications, and, in any event, his methodology with respect to both the tire defects and the tire pressure monitoring system lacked the reliability required by *Daubert.*

Without expert testimony to support any of their claims, the court granted summary judgment for all defendants on all of the Timms' claims.

## II

The Timms challenge the district court's conclusions regarding the need for expert testimony on their helmet claims and the adequacy of their proposed expert testimony for their motorcycle and tire claims.

### A

We begin with the helmet claims. While the Timms initially sued more than a dozen defendants, by summary judgment, only one corporate defendant remained—Nanal, Inc. Recall that Nanal owns and operates the website where Mary Timm purchased her helmet. Because Donald Timm

purchased his helmet on a different website, and thus not from a supplier named as a defendant, we consider the helmet claims only with respect to Mary.

The parties agree that the Indiana Products Liability Act governs the Timms' claims. See Ind. Code § 34-20-1-1. Under the Act, "a plaintiff must prove that a product was placed into the stream of commerce in a defective condition unreasonably dangerous to the user and that plaintiff's injuries were caused by this dangerous product." *Campbell Hausfeld/Scott Fetzer Co. v. Johnson*, 109 N.E.3d 953, 956 (Ind. 2018).

The Timms contend that Mary's helmet was unreasonably dangerous within the meaning of the Act due to design and manufacturing defects and a related failure to warn. To survive summary judgment under each of these theories, Indiana law required the Timms to show that the alleged defects proximately caused Mary's injuries. See *Piltch v. Ford Motor Co.*, 778 F.3d 628, 632 (7th Cir. 2015) (citing *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007)). The Timms sought to do so by invoking the doctrine of "crashworthiness," an approach to causation that "expands the proximate cause requirement to include enhanced injuries" caused by a defective product. *Green v. Ford Motor Co.*, 942 N.E.2d 791, 793–94 (Ind. 2011) (quoting *Miller v. Todd*, 551 N.E.2d 1139, 1142 (Ind. 1990)). Put another way, the doctrine applies to situations where, as here, the allegedly defective product did not *cause* the initial accident and any and all resulting injuries, but rather increased or enhanced the severity of a plaintiff's injuries. See *id.*

The Timms contend that Mary's injuries from the crash were more severe than they would have been had her helmet met all federal safety regulations. To show that defects in the

helmet enhanced her injuries, the Timms presented the district court with her medical records. While this evidence certainly confirmed that Mary suffered very serious head injuries in the accident, we agree with the district court that the records alone failed to distinguish those injuries that would have resulted from any similar crash from any specific enhanced injuries Mary sustained as a result of the allegedly defective helmet. While plaintiffs are not always required to provide expert testimony to establish proximate causation, see *U–Haul Int'l., Inc. v. Nulls Machine & Mfg. Shop*, 736 N.E.2d 271, 285 n.3 (Ind. Ct. App. 2000), the district court correctly concluded that Indiana law required expert testimony here because distinguishing expected from enhanced injuries was an inquiry beyond the understanding of lay jurors, see *Piltch*, 778 F.3d at 632.

The district court's reasoning finds sound support in our caselaw. We have previously held that when a plaintiff seeks under Indiana law to distinguish between ordinary and enhanced injuries, expert testimony is necessary to prevent the jury from engaging in guesswork. *Id*. at 634. In *Piltch v. Ford Motor Co.*, for example, the plaintiffs brought manufacturing and design defect claims under the Indiana Products Liability Act related to the air bags' failure to deploy in a car accident. See *id*. Yet because the plaintiffs failed to present expert testimony as to their injuries, we affirmed summary judgment in favor of the car manufacturer, explaining that without any expert testimony, a "lay juror could not distinguish between the injuries caused by the collision and the enhanced injuries caused by the air bags' failure to deploy without engaging in pure speculation." *Id*.

All agree that Mary Timm suffered severe injuries. But without the assistance of an expert, a juror would be unable to distinguish between those injuries caused by the crash—in other words, the injuries anyone in this type of accident would have suffered—and any enhanced or more severe injuries caused by the defective helmet. Summary judgment was therefore proper on the Timms' design defect and manufacturing defect claims.

For the sake of completeness, we address the failure-to-warn claim the Timms advanced based on allegations that the defendants delayed issuing the helmet recall notice. The district court considered this a claim of negligent recall and entered summary judgment for the helmet defendants because it found no support for such claims under Indiana law. Because the Timms do not address this argument on appeal, we consider it waived. See *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) (declining to consider claims not adequately briefed).

B

The Timms next argue that summary judgment against Harley-Davidson and Goodyear was improper because the district court erred in excluding the testimony of their experts, William Woehrle and Dr. Daniel Lee.

At the time of the accident, the Timms were traveling cross country on their 2006 Harley-Davidson Ultra Classic Motorcycle. It is undisputed that the rear tire—manufactured by Goodyear Dunlop and branded with the name Harley-Davidson—was punctured by a road hazard and began to deflate, eventually unseating from its rim. The issue at the heart of the Timms' claims requires pinpointing exactly when the

rubber unseated from the rim. For their part, the Timms contend that the tire's unseating occurred nearly instantly because of defects and, in turn, that the unseating caused Donald to lose control of the motorcycle and crash. The defendants urge a contrary view. They resist that the unseating immediately followed the puncture and instead maintain that the motorcycle crash itself is what caused the tire to unseat from the rim. The Timms rightly recognized that answering this causation question required expert testimony. Toward that end, they offered the opinions of Woehrle and Lee, which the district court ultimately excluded.

Federal Rule of Evidence 702 and *Daubert* govern the admissibility of expert testimony. Under this framework, a trial judge, as a gatekeeping matter, is responsible for ensuring that proposed expert testimony "is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. In assessing reliability, "the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

Although reliability must be assessed case by case, *Daubert* identified a non-exhaustive list of factors to aid the analysis. Relevant considerations include not only whether the expert's theory "can be (and has been) tested," but also whether it has been "subjected to peer review and publication." 509 U.S. at 593. Other potential considerations include "the known or potential rate of error" and whether the theory or technique has achieved "general acceptance" in the relevant expert community. *Id.* at 594–95. No one factor is dispositive, however, and "the Supreme Court has repeatedly emphasized [that] the Rule 702 test is a flexible one." *Smith*, 215 F.3d at 719. The

Court has likewise underscored that the correct inquiry focuses not on "the ultimate correctness of the expert's conclusions," but rather on "the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013) (citing *Daubert*, 509 U.S. at 595).

Faced as we are here with a challenge to a district court's exclusion of expert testimony, our review proceeds in two steps. We "review de novo whether a district judge has followed Rule 702 and *Daubert*" and, if the court correctly "applied the Rule 702/*Daubert* framework, we [then] review [its] decision to admit or exclude expert testimony for abuse of discretion." *Haley v. Kolbe & Kolbe Millwork Co.*, 863 F.3d 600, 611 (7th Cir. 2017).

We find no errors here. In response to the defendants' motions to exclude Woehrle's and Lee's testimony, the district court held a *Daubert* hearing. The court used the hearing to probe Woehrle about the basis for his opinions, the methodology he employed to formulate his theories, and the potential rate of error of his approach—all proper considerations under Rule 702 and *Daubert*. In its written decision, the court further conveyed its understanding of the Rule and *Daubert* factors by accurately articulating them and proceeding to apply them to Woehrle's and Lee's testimony and opinions. See *Clark v. River Metals Recycling*, 929 F.3d 434, 438 (7th Cir. 2019). There is no question the district court applied the correct evidentiary framework.

Turning to the court's rulings, we see no abuse of discretion with the exclusion of Woehrle's and Lee's testimony. In his report and testimony, Woehrle posited that the Timms' motorcycle accident was the result of the tire unseating from

its rim. He further opined that the unseating occurred because there was excess "flash" in the bead area (the edge of the tire that sits on the wheel rim) and insufficient rubber covering the chafer strip (a reinforcement of the bead area), which weakened the fit between the tire and the rim. Woehrle testified that he arrived at this conclusion by conducting a physical examination of the tire and wheel. When pressed about his methodology, however, Woehrle conceded that he could point to no empirical data or controlled experiments to support his opinions. He further acknowledged that he had not done any testing to validate his opinion, was unaware of any relevant tests conducted by others, and knew of no way others could objectively replicate his approach.

On this evidence, the district court was well within its discretion to exclude Woerhle's opinions about the cause of the tire unseating. To satisfy the requirements of Rule 702 and *Daubert*, Woerhle needed to show that his conclusions were the fruit of a rigorous, objectively-verifiable approach—something more than mere speculation. While Woerhle may well have had the experience and knowledge to make this showing, he failed to do so. All of this leads to underscore anew that even a "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method." *Smith*, 215 F.3d at 718 (quoting *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999)). The record amply supports the district court's conclusion that the Timms failed to establish that Woehrle's opinions were sufficiently reliable.

Nor do we see any abuse of discretion in the district court's exclusion of Dr. Lee's opinions regarding the cause of the crash. In his report, Dr. Lee opined that Mr. Timm lost

control of the motorcycle because the rear tire started to "hop." This hopping, Lee maintained, was the result of the tire unseating from the rim. In addition to questioning Lee's qualifications with respect to the functioning of tires and how they can unseat from a rim, the district court concluded that Lee's methodology did not comport with *Daubert* because Lee failed to point to any test replicating the conditions under which the rubber beading would have come unseated or any testing to support his theory that bead unseating would cause a motorcycle to hop. Lee likewise failed to identify any scientific literature to support his opinion. In the absence of anything to support his conclusions, the district court acted within its discretion in excluding Dr. Lee's opinions about the cause of the unseating.

Finally, we consider the court's exclusion of Woehrle's and Lee's testimony regarding the tire pressure monitoring system. The Timms alleged that the motorcycle was defectively designed because it should have been equipped with such a monitoring system. They sought to support this claim with testimony from both Woehrle and Lee, who opined that the accident would not have happened if the motorcycle came equipped with such a system.

The district court concluded that neither expert possessed the requisite qualifications to offer such testimony. Here, too, we find no abuse of discretion. Though Woehrle has expertise with the design and operation of tires, the record supports the district court's conclusion that this knowledge and experience does not extend to motorcycles. Indeed, Woehrle himself acknowledged that he is not an expert in the design of tire pressure monitoring systems for motorcycles and he has never conducted any research on this topic. While the court

recognized that Dr. Lee did have significant experience with motorcycles, Lee testified during his deposition that he lacked familiarity with tire pressure monitoring systems. Given this admission, the district court's assessment of Lee's qualifications—and its decision to exclude his testimony—reflected no abuse of discretion.

Because the Timms' manufacturing and design defect claims against Harley-Davidson and Goodyear rested on Woehrle's and Lee's testimony, the district court's evidentiary rulings defeated those claims. The same evidentiary shortfalls defeated the Timms' claim based on a failure to warn.

* * *

What happened here was tragic. Donald and Mary Timm suffered extremely serious injuries in an extremely serious motorcycle accident. We have no doubt that these injuries have impacted their lives in substantial and lasting ways. What we cannot say, though, is that the district court committed any error in rejecting their legal claims. So we are left to AFFIRM.