In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1872
ADELAIDA ANDERSON, individually, and as Administrator of
the Estate of JEFFREY LEE ANDERSON, deceased,
 Plaintiff-Appellant,

 v.

THE RAYMOND CORPORATION,
 Defendant-Appellee.
 ____________________

 Appeal from the United States District Court for the
 Southern District of Illinois.
 No. 19-cv-800 — Stephen P. McGlynn, Judge.
 ____________________

 ARGUED DECEMBER 1, 2022 — DECIDED FEBRUARY 1, 2023
 ____________________

 Before EASTERBROOK, HAMILTON, and KIRSCH, Circuit Judges.
 KIRSCH, Circuit Judge. Adelaida Anderson worked as a
standup forklift operator at a FedEx warehouse in Eﬃngham,
Illinois. While pulling a load in July 2017, she hit a bump and
fell out of the forklift onto the ﬂoor. The forklift continued
moving and ran over her leg; the resulting injuries necessi-
tated its amputation.
2 No. 22-1872

 Anderson brought this diversity suit against the forklift’s
manufacturer, The Raymond Corporation, alleging that the
forklift was negligently designed. As trial neared, the parties
ﬁled dueling motions over the admissibility of the testimony
of Dr. John Meyer, one of Anderson’s experts. Meyer believed
that Raymond could have made a number of changes to its
design that would have prevented Anderson’s accident.
Meyer’s primary suggestion was that Raymond equip each of
its forklifts with a door to enclose the operating compartment,
which would prevent operators like Anderson from falling
into the forklift’s path. Like other standup forklift manufac-
turers, Raymond oﬀers doors as an option that some custom-
ers choose, but Raymond does not ﬁt doors to its forklifts as
standard. Raymond says it resists ﬁtting doors as standard be-
cause a door could impede the operator’s ability to make a
quick exit in the event the forklift runs oﬀ a loading dock or
begins to tip over. The district court concluded that Meyer’s
opinion about the absence of a door was inadmissible because
it did not satisfy Federal Rule of Evidence 702 or the test set
forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S.
579 (1993). (The district court admitted Meyer’s opinions on
other potential design improvements, which are not at issue
on appeal, so we say no more about them.)
 The jury found that the forklift was not defectively de-
signed and returned a verdict in Raymond’s favor. Anderson
unsuccessfully moved for a new trial, arguing then and on ap-
peal that the erroneous exclusion of Meyer’s opinion was sub-
stantially prejudicial to her case. We agree and reverse.
 I
 The erroneous exclusion of evidence warrants a new trial
only if the error had a substantial and injurious eﬀect or
No. 22-1872 3

inﬂuence on the jury’s decision. Bintz v. Bertrand, 403 F.3d 859,
869 (7th Cir. 2005). We start with the question of whether the
district court erred when it excluded Meyer’s testimony.
 Federal Rule of Evidence 702 governs the admissibility of
expert testimony. Haley v. Kolbe & Kolbe Millwork Co., 863 F.3d
600, 611 (7th Cir. 2017). Rule 702 provides that a qualiﬁed ex-
pert witness may oﬀer an opinion if: (a) the expert’s scientiﬁc,
technical, or other specialized knowledge will help the trier of
fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on suﬃcient facts or data; (c) the
testimony is the product of reliable principles and methods;
and (d) the expert has reliably applied the principles and
methods to the facts of the case. See Gopalratnam v. Hewlett-
Packard Co., 877 F.3d 771, 779 (7th Cir. 2017) (“[T]he district
court must evaluate: (1) the proﬀered expert’s qualiﬁcations;
(2) the reliability of the expert’s methodology; and (3) the rel-
evance of the expert’s testimony.”) (emphasis omitted). Be-
cause “much depends upon the particular circumstances of
the particular case at issue,” the Rule 702 analysis is case-spe-
ciﬁc. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999); see
also C.W. ex rel. Wood v. Textron, Inc., 807 F.3d 827, 835 (7th Cir.
2015) (“Ultimately, reliability is determined on a case-by-case
basis.”).
 Our review of an expert’s exclusion proceeds in two steps.
Timm v. Goodyear Dunlop Tires N. Am., Ltd., 932 F.3d 986, 993–
94 (7th Cir. 2019). We ﬁrst determine de novo whether a dis-
trict court has adhered to Rule 702. Haley, 863 F.3d at 611.
So long as the district court adhered to its requirements, “we
shall not disturb the district court’s ﬁndings unless they are
manifestly erroneous”—that is, only if they amount to an
abuse of discretion. Naeem v. McKesson Drug Co., 444 F.3d 593,
4 No. 22-1872

607–08 (7th Cir. 2006) (citation omitted). If, however, the dis-
trict court failed to conduct the requisite analysis, we review
the expert opinion’s exclusion or admission de novo. United
States v. Adame, 827 F.3d 637, 645 (7th Cir. 2016). A court “must
provide more than just conclusory statements of admissibility
or inadmissibility to show that it adequately performed its
gatekeeping function.” Gayton v. McCoy, 593 F.3d 610, 616 (7th
Cir. 2010); Naeem, 444 F.3d at 607−08.
 Here, the district court addressed Meyer’s methodology in
one sentence: “This Court ﬁnds that John Meyer’s opinion
that Raymond was negligent or that its forklift is dangerously
and defectively designed because it does not come standard
with a compartment door, especially one that locks or latches,
simply does not pass the Daubert test.” That is a conclusion—
not an analysis—to which we owe no deference.
 Raymond argues that the district court’s analysis was
more substantial—that it made a reasoned ﬁnding when it
wrote, “John Meyer’s analysis and eﬀorts in this case are not
suﬃciently exhaustive or thorough to green light a jury to
consider rejecting the engineering consensus on this speciﬁc
matter.” As Anderson noted, Raymond conveniently omits
two essential words from the beginning of that sentence:
“Raymond argues.” When pressed about this selective omis-
sion at oral argument, Raymond doubled down, arguing that
the district court adopted Raymond’s arguments by starting
the next sentence with “Indeed.” We are not persuaded. Even
if we were, nothing would change. What follows “Indeed” is
nothing but reliance on other courts that excluded similar
opinions: “Indeed, other courts have concluded that wit-
nesses opining that a compartment door should be aﬃxed to
a [forklift] lacked suﬃcient reliability … to allow their
No. 22-1872 5

presentment for a jury’s consideration.” That the door-as-
standard opinion has been rejected elsewhere tells us nothing
about Meyer’s methodology, and a district court’s decision to
admit or exclude expert opinions must rest “solely on principles
and methodology, not on the conclusions that they generate.”
Daubert, 509 U.S. at 595. Thus, relying on a history of excluding
the same conclusion elsewhere—without evaluating method-
ological or factual similarities between the proﬀered expert’s
opinion and those previously excluded—would still necessi-
tate de novo review.
 We conclude that Meyer’s opinion should have been per-
mitted. First, considering his “full range of practical experi-
ence as well as academic or technical training … in a given
area[,]” we agree with the district court that Meyer is qualiﬁed
to oﬀer his opinion. United States v. Parra, 402 F.3d 752, 758
(7th Cir. 2005) (citation omitted). Meyer has extensive train-
ing—he received his doctorate in mechanical engineering
from MIT—and experience in failure analysis. He has spent
most of his professional career investigating machine acci-
dents and performing accident reconstructions. He even has
a license to operate a stand-up forklift like that at issue here,
albeit not this speciﬁc model. Raymond argues that Meyer is
unqualiﬁed to oﬀer his opinion because he has limited expe-
rience with forklifts. That focus is misplaced. An expert’s spe-
cialization or lack thereof “typically goes to the weight to be
placed on [her] opinion, not its admissibility.” Hall v. Flan-
nery, 840 F.3d 922, 929 (7th Cir. 2016); Gayton, 593 F.3d at 617
(citation omitted) (“Ordinarily, courts impose no requirement
that an expert be a specialist in a given ﬁeld.”). Meyer’s exten-
sive familiarity with accident reconstruction and training as a
professional engineer qualify him to render opinions on what
could have been done to prevent Anderson’s injuries.
6 No. 22-1872

 Second, we consider the reliability of Meyer’s opinion by
making “a preliminary assessment of whether the reasoning
or methodology underlying the testimony is scientiﬁcally
valid.” Daubert, 509 U.S. at 592–93. Some factors we look to
include: (1) whether the particular scientiﬁc theory “can be
(and has been) tested”; (2) whether the theory “has been sub-
jected to peer review and publication”; (3) the “known or po-
tential rate of error”; (4) the “existence and maintenance of
standards controlling the technique’s operation”; and
(5) whether the technique has achieved “general acceptance”
in the relevant scientiﬁc or expert community. Deputy v. Leh-
man Bros., Inc., 345 F.3d 494, 505 (7th Cir. 2003) (quoting Daub-
ert, 509 U.S. at 593–94). “No one factor is dispositive, however,
and ‘the Supreme Court has repeatedly emphasized [that] the
Rule 702 test is a ﬂexible one.’” Timm, 932 F.3d at 993 (altera-
tion in original) (quoting Smith v. Ford Motor Co., 215 F.3d 713,
719 (7th Cir. 2000)). At all times “the correct inquiry focuses
not on ‘the ultimate correctness of the expert’s conclusions,’
but rather on ‘the soundness and care with which the expert
arrived at her opinion.’” Timm, 932 F.3d at 993 (quoting
Schultz v. Akzo Nobel Paints, LLC, 721 F.3d 426, 431 (7th Cir.
2013)).
 Meyer’s insights stem from his training and experience in-
vestigating industrial accidents. Meyer visited the FedEx
warehouse with Anderson to reconstruct (to the best of An-
derson’s recollection) what happened. He reviewed troves of
data generated from forklift accidents. He noted that Ray-
mond implemented structural measures to guard against tip-
over events, where a forklift goes forks-ﬁrst over a ledge or is
improperly balanced while carrying a load. (Recall, the need
for a quick escape in such situations was Raymond’s justiﬁca-
tion for not ﬁtting a door as standard.) Meyer looked to
No. 22-1872 7

operators who elected to install the optional door Raymond
oﬀers and found no increase in tip-over injuries. From all of
this, Meyer concluded that Raymond’s reliance on training
and warnings, as opposed to structural changes like those im-
plemented to prevent tip-overs, was insuﬃcient to mitigate
the risk of an accident like Anderson’s. Given that Raymond
designed and oﬀered a door as an option, Meyer concluded
that installing it as standard was feasible and would reduce
the frequency of crush accidents like Anderson’s.
 Raymond, however, insists that Meyer’s methodology is
ﬂawed. Pointing to our opinion in Dhillon v. Crown Controls
Corporation, Raymond argues that Meyer’s failure to conduct
his own tests renders his door opinion categorically inadmis-
sible. 269 F.3d 865 (7th Cir. 2001). Not so. While in Dhillon we
held that a district court did not abuse its discretion in exclud-
ing an expert who failed to design or test his proposed forklift
door, we expressly rejected the notion that hands-on testing
is an absolute prerequisite to the admission of expert testi-
mony. Id. at 870. We reaﬃrm that conclusion today even
though the underlying principle is obvious. An expert hoping
to testify about benzene’s eﬀects on children need not expose
children to benzene. See Schmude v. Tricam Indus., Inc.,
556 F.3d 624, 626 (7th Cir. 2009) (“[T]he defendant has never
explained what kind of test could be performed … except to
remove the same rivet from an identical ladder, have a 350-
pound man climb halfway up and start poking with his hands
in the ceiling, and see what happens.”). That Raymond mar-
kets Meyer’s proposed alternative underscores our conclu-
sion: Raymond’s customers who have elected to ﬁt their fork-
lifts with Raymond’s optional door have been testing Meyer’s
alternative for him. Raymond can critique the use of those
8 No. 22-1872

customers as comparators, but such arguments go to the
weight, not the admissibility, of Meyer’s testimony.
 Raymond next argues that Meyer’s methodology is unac-
ceptable because the conclusions that ﬂow from it have been
rejected elsewhere. By now it should be clear that this is an
insuﬃcient basis for excluding an expert’s opinion—our in-
quiry focuses on the expert’s methodology, not whether we
agree with his conclusions. In a similar vein, Raymond points
to its decades of experience designing forklifts and to its long
history of defeating claims like Anderson’s in courts across
the country as reasons to exclude Meyer’s opinion. Neither is
relevant to the Rule 702 inquiry, which is concerned only with
Meyer’s ability to aid the jury in this case. The same can be
said of Raymond’s appeal to the authority of the American
National Standards Institute. While ANSI may suggest a pref-
erence for open operating compartments, we are aware of no
case stating that an expert who disagrees with ANSI’s sugges-
tion is categorically barred from testifying. Just the opposite:
“ANSI’s [recommendation,] standing alone, is [not] a dispos-
itive consideration.” Baugh v. Cuprum S.A. de C.V., 845 F.3d
838, 845 (7th Cir. 2017).
 Given that Meyer’s methodology rests on accepted scien-
tiﬁc principles, Raymond’s critiques go to the weight his opin-
ion should be given rather than its admissibility. The opinion
satisﬁes Rule 702’s reliability requirement.
 The ﬁnal requirement—relevance—is uncontested. This is
a product defect case; demonstrating a viable alternative that
could have prevented Anderson’s injury is the whole ball-
game. Meyer’s door opinion is thus relevant to the jury’s task.
No. 22-1872 9

 Because Meyer is qualiﬁed, his methodology is sound, and
his opinion is relevant, his door opinion should have been ad-
mitted.
 II
 Not all errors require a new trial, and we will reverse an
evidentiary ruling only when we are left with a ﬁrm convic-
tion that the district court’s error could have aﬀected the
jury’s decision. Fed. R. Civ. P. 61; Hall v. Flannery, 840 F.3d
922, 926–27 (7th Cir. 2016). Here, we have no diﬃculty con-
cluding that the exclusion of Meyer’s opinion could have se-
riously aﬀected the jury’s verdict. Meyer was the only expert
Anderson oﬀered to testify on the eﬀect of a door, and a door
was Meyer’s primary alternative design suggestion. A new
trial is required.
 * * *
 The district court’s denial of Anderson’s motion for a new
trial is REVERSED, the judgment is VACATED, and the case is
REMANDED for proceedings consistent with this opinion.
None of the foregoing should be read to curb the district
court’s ability to control the testimony oﬀered at trial. Meet-
ing Rule 702’s requirements does not exempt an expert from
independent prohibitions on, for example, irrelevant, confus-
ing, or unfairly prejudicial testimony. We leave to the district
court’s considered discretion all other evidentiary issues. Fur-
thermore, we have no doubt that the district judge can oﬀer
the parties a fair retrial, so we override our standard practice
of reassigning a case remanded for a new trial. See Cir. R. 36.